## MARSHALL FIELD & CO. v. NATIONAL LABOR RELATIONS BOARD.
### No. 10593.

United States Court of Appeals, Seventh Circuit.

Nov. 14, 1952.

As Amended Jan. 8, 1953.

Ralph E. Bowers, Charles R. Kaufman and Henry M. Thullen, Chicago, Ill., (Vedder, Price, Kaufman & Kammholz, Chicago, Ill., of counsel), for petitioner.

A. Norman Somers, Asst. Gen. Counsel, Mozart G. Ratner, Asst. Gen. Counsel, National Labor Relations Board, Washington, D. C., George J. Bott, Gen. Counsel, David P. Findling, Asst. Gen. Counsel, Dominick L. Manoli, Samuel M. Singer, National Labor Relations Board, Washington, D. C., for respondent.

Before KERNER,* DUFFY and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

This proceeding is before the court on a petition to review and set aside an order of the National Labor Relations Board[1] issued against petitioner[2] on February 15, 1952; in its answer the Board requests enforcement of said order.

The Board approved the trial examiner's findings that no illegal motive existed in the company's adoption of its rule against solicitation; and that such rule prohibiting the solicitation of employees in selling areas, and against soliciting employees while they are on duty is valid. However, the Board held that the company had violated Sec. 8(a) (1) of the Act in the following respects: (a) in prohibiting access by non-employee union organizers in reasonable numbers in cafeterias and restaurants reserved for the exclusive use of employees, and prohibiting such organizers from soliciting employees off duty in such cafeterias and restaurants[3]; (b) in prohibiting non-employee union organizers and also employees from soliciting other members on non-working time in public waiting rooms and washrooms; (c) preventing, by ejection, threat of arrest, and

---

* Judge Kerner, deceased, who participated in the hearing of this case and approved of the opinion handed down November 14, 1952, did not participate in this amendment of that opinion.

1. Under Sec. 10, National Labor Relations Act, 29 U.S.C.A. §§ 151–166, as amended by the Labor-Management Relations Act, 1947, 29 U.S.C.A. §§ 151–168.

2. Hereinafter referred to as the company.

3. In this respect the Board reversed the trial examiner's findings that the company acted within its rights in excluding non-employee union organizers from all areas closed to the public, including employee cafeterias.

arrest,[4] non-employee union organizers from soliciting employees for union membership; (d) seizing and retaining authorization cards[5]; and (e) interrogating its employees concerning their union affiliations, activities, and sympathies, and promising a benefit in connection therewith.

Petitioner operates a large retail department store which is located in the downtown business district of the city of Chicago, and occupies two separate buildings. The Main Store covers an entire city block and the Store for Men occupies the first five floors of an office building across Washington Street from the Main Store and is connected therewith by an underground passage at the basement level. The Main Store is bisected at street level by Holden Court, a street or alleyway owned by the company, and is used to a limited extent by company employees, and also by the public, to enter the building. Above the street level the two portions of the main building are continuous.

The store is open to the public week days from 9:15 A.M. to 5:45 P.M. There are from 7,000 to 8,000 regular employees who work a full workweek, and from 2,500 to 3,000 part-time employees who work varied hours per week. The great majority of the regular employees arrive at the store between 8:30 and 9:00 A.M. and leave between 5:15 and 6:00 P.M.

The areas of the store premises to which the general public is admitted occupy most of the space on all floors from the Budget Floor, which is the first basement under both the Main Store and the Store for Men, to and including the ninth floor of the Main Store and the fifth floor of the Store for Men. There are also some non-public areas on these floors, such as storerooms and offices. Extensive public restaurant facilities are located on the seventh floor of the Main Store and a small Budget Dinette is open to the public on the Budget Floor of the Main Store. Public washrooms are located on most of the public floors and a public waiting room is on the third floor of the Main Store.

The public is excluded from certain areas of the store. The first and second sub-basements under the Main Store and the Store for Men are devoted to storerooms, receiving rooms, opening and marking rooms, offices, supply rooms, equipment rooms and various other rooms devoted to mechanical devices. In the second sub-basement there is an employee cafeteria, and in the first sub-basement an employee locker room. The tenth, eleventh, twelfth and thirteenth floors of the Main Store are also non-public floors, used for offices, packing rooms, storerooms, etc. Located on a portion of the twelfth floor are certain employee facilities, including the twelfth floor Employees' Cafeteria, where food and beverages are served to employees at a reduced price. Entrances to the various non-public areas have been indicated by signs notifying the public that such areas were for the use of employees only.

In applying its non-solicitation rule the company distinguished only between those areas in its store frequented by the public and those to which the public was not admitted. However, in its findings, the Board designated three areas, by dividing the areas frequented by the public into selling areas and non-selling areas.

Starting in the summer of 1949 the Retail Clerks International Association, Local No. 1515 M.F., A.F.L.,[6] started an organizing campaign among the company's sales people and certain merchandise handlers. Much of the soliciting for union membership was done by non-employee union organizers. As many as 20 organizers were in the store at one time, soliciting membership in the union. The employees were solicited on the selling floors as well as in the non-public areas. In spite of warnings

---

4. In this respect the Board reversed the trial examiner's findings that the organizers had carried on their activities in an improper manner and that the company did not use unnecessary and improper force or other methods of controlled solicitation.

5. Here again the Board reversed the trial examiner's findings that under the circumstances such interference was not unlawful.

6. Hereinafter called the union.

by the company to desist, the organizers made it clear that they intended to solicit in the store, regardless of the company's rules against solicitation in various areas. Josephine Clark was one of the most persistent organizers, and made almost daily visits to the store attempting to be seen by and talk to as many employees as she possibly could. The company issued repeated warnings that organizers violating its rules against solicitation would be arrested for trespass. In April and again in May, 1950, Clark was ejected from the twelfth floor Employees' Cafeteria, and in May, 1950, she was also ejected from the second basement Employees' Cafeteria. On June 19, 1950, Clark was asked to leave the store, and when she refused, a police officer was called, whereupon Clark created a disturbance, shouting that the "millionaire company" was acting like Germans and the Gestapo. She struck the officer, overturned tables and shouted remarks derogatory to the company directed to various of its employees.

The Board found the company's rules were valid in so far as they prohibited any solicitation by all organizers in the following areas: selling floors, aisles, corridors, elevators, escalators, stairways, areas reasonably closed to discussion such as the library, and employee working areas to which either solicitor or solicitee is not allowed free access, such as storerooms which are closed to employees not engaged in that department.

The Board found, however, the company's rules were invalid in so far as they prohibited solicitation of off duty employees in the following areas: (a) by all organizers—public waiting rooms, rest rooms, and Holden Court; (b) by employee-organizers—non-public employee working areas to which both the solicitor and solicitee are permitted free access; and (c) by non-employee organizers—the Employees' Cafeterias and Restaurants.

It will be noted that the Board held invalid the company's rules barring non-employee organizers from Employees' Restaurants, where all other non-employees were similarly barred. It likewise held invalid its rules against solicitation by non-employee organizers in its public waiting room and washrooms, where all other solicitation was similarly barred. The Board ordered the company to permit non-employee union organizers to use the Employees' Cafeterias, its public waiting room and washrooms and Holden Court for union solicitation.[7]

Mr. Paul M. Herzog, Chairman of the Board, dissenting in part, said: "But I think that my colleagues have not gone far enough in reversing the Trial Examiner's erroneous holding that the Respondent violated the Act by prohibiting solicitation in the so-called non-selling public areas of the store. I would hold that prohibition lawful, except as applied to the outdoor private street. I would draw no distinction between the aisles, corridors and elevators on the one hand, and the public waiting and rest rooms on the other. It seems to me that in all these areas, and indeed in all sections of the store dedicated to the use and passage of the public—whether characterized as selling or non-selling—the Employer and its customers are entitled to be spared the disruption of their normal affairs which is bound to flow from any active union solicitation campaign. As a practical matter, all sections of a department store that are open to the public are inextricably interwoven with those which can be more literally termed 'selling space.' * * * such areas contribute to the desired relationship between retailer and customer, whether facilities are provided out of necessity, or for the customer's convenience, or merely to generate good-will. They should not be converted into an arena for the organization of employees. The statute does not command that result, and this Board should not facilitate it."

The basis of the Board's decision seems to be its finding of "unique handi-

---

7. The Board noted that the company may adopt reasonable regulations on solicitation in restaurants, waiting rooms, and rest rooms, to insure that the solicitation is conducted merely as an incident to the normal use of those facilities.

caps" to self-organization. The Board referred to the limited opportunity of employees to confer with fellow workers before and after working hours, and mentioned the store's continuous business activity throughout the day, which required staggered relief periods for the employees. The Board stated that the right and opportunity to communicate and consult with outside organizers is an indispensable attribute to the right of self-organization. The Board concluded that the company's right to exclude the public generally from non-public areas in the store cannot operate to exclude union organizers from such areas claiming that such denial of access constitutes a serious impediment in the employees' rights of self-organization.

Apparently this is the first case in which the Board has required an employer to permit non-employee union organizers to solicit in employees' cafeterias or public waiting room or washrooms, absent discrimination, illegal motive, or other special circumstances which the Board did not find to exist here. As far as we are advised, the instant case is also the first in which the Board has held that a different rule applies to union solicitation in non-selling areas used by department store customers from that applicable to selling areas used by such customers.

The Board emphasized that the company's store was located in an area bounded by busy streets, and that there are numerous entrances from the sidewalks bordering those streets to the store, and that organizers had difficulty distinguishing employees from customers passing through such entrances. However, the evidence disclosed that 95% of the regular employees entered the store between 8:30 and 9:00 A.M. The general public is not admitted until 9:15 A.M. Only four entrances to the Main Store and one entrance to the Store for Men are open to the employees coming to work. During such periods union organizers would have no difficulty in ascertaining who were employees. In

fact on many occasions non-employee union organizers have solicited and distributed literature at these entrances.[8]

The desire of non-employee union organizers, to contact employees in the Employees' Cafeterias, is understandable. The company granted a liberal time off to its employees, amounting to 1½ hours during the course of a day. This could be taken in two 45 minute periods, or two 15 minute periods and an hour period. As a result, a large number of employees spent their off duty time at the Employees' Cafeterias where non-employee organizers were prohibited from soliciting union memberships.

The courts have held that Sec. 7 of the Act gives a right to a non-employee to enter and solicit union membership on an employer's premises under two general situations, the first of which is where there has been discrimination. N. L. R. B. v. Stowe Spinning Co., 336 U.S. 226, 69 S.Ct. 541, 93 L.Ed. 638; Bonwit Teller, Inc., v. N. L. R. B., 2 Cir., 197 F.2d 640. However, the Board found that discrimination did not exist in the instant case. The second situation is where union organization must proceed upon the employer's premises or be "seriously handicapped." An illustration is where a lumber camp was isolated and its very location prevented employees from gaining access to outside contacts. N. L. R. B. v. Lake Superior Lumber Corp., 6 Cir., 167 F.2d 147.

The Stowe Spinning Co. case, supra, involved a company owned mill town. In upholding a Board order permitting non-employee union organizers to use an employer-owned meeting hall, the court emphasized the anti-union discrimination resulting from the fact that other organizations were permitted to use the hall. The principle involved in that case is well stated in Justice Reed's dissent, 336 U.S. at pages 240–241, 69 S.Ct. at page 548: "It is only when there is a violation through an interference with or a restraining or coercion of employees' rights under § 7 that an unfair labor practice finding may be

8. Approximately 2,000 of the company's employees have been organized by other unions while the same rules prohibiting solicitation were in effect.

predicated on the employer's acts. The employer is not required to aid employees to organize. The law forbids only interference."

The Board has approved the prohibition of union solicitation and discussion on the selling floors and related traffic facilities of department stores even when the employees are off duty. May Department Stores Co., 59 N.L.R.B. 976. The Board pointed out in that case that solicitation in such areas may unduly interrupt or disturb the customer-salesperson relationship with a detrimental effect upon the employer's business. Other department store cases decided by the Board since the May Department Store decision are The J. L. Hudson Co., 67 N.L.R.B. 1403; N. L. R. B. v. J. L. Hudson Co., 6 Cir., 160 F.2d 105; Goldblatt Bros., Inc., 77 N.L.R.B. 1262; Meier & Frank Co., Inc., 89 N.L.R.B. 1016; Bonwit Teller, Inc., 96 N.L.R.B. 608, modified and enforced in 2 Cir., 197 F.2d 640. None of these decisions of the Board, previous to this case, has differentiated between public selling areas and public non-selling areas in so far as the validity of prohibiting solicitation in such areas is concerned.

We have heretofore pointed out in Footnotes 3, 4 and 5 that some of the principal findings of the Board herein were contrary to those made by the trial examiner. In considering whether substantial evidence supports the findings of the Board, we must keep in mind the statement by the Supreme Court in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456: "We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony." In the same opinion the court said, 340 U.S. at page 488, 71 S.Ct. at page 465: "Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view."

■ The Board made a finding that a distinction exists between the public waiting room and washrooms and the remainder of the store frequented by the public. It is difficult to ascertain from the evidence the basis for such a finding in view of the further finding of the Board that solicitation by non-employee organizers may be prohibited in many areas of the store, the Board stating, "Many of these areas are work rooms or stock rooms where the employees concerned would not be off-duty at the same time or in sufficient numbers to make solicitation possible without disruption of the Respondent's business. Other areas such as cloak and locker rooms would not presumably be occupied by off-duty employees in large numbers throughout most of the day." There is no evidence that employees spend off-duty time in the public waiting room. Wash rooms are used, not during an employee's off-duty time, but during his or her working hours when personal necessity arises, and employees cannot take more than 5 minutes for these purposes without criticism. Substantial evidence supports Chairman Herzog when he says, "I would draw no distinction between the aisles, corridors and elevators on the one hand, and the public waiting and rest rooms on the other." But there is no substantial evidence to support the distinction made by the Board.

■ The finding of the Board as to Holden Court is of lesser importance. This is primarily a working area used occasionally by employees and customers. However, it does partake of the nature of a city street, even though owned by the company, and we think there is substantial evidence to sustain the findings of the Board with respect to Holden Court.

The Board states that contact between employees was restricted to instances where

employees were off-duty at the same time in "the small portions" of the store where such activities are allowed. However, the evidence shows that solicitation by off-duty employees is prohibited only in those areas frequented by the public. The top four floors of the Main Store, the two sub-basement floors, and portions of each of the other floors are non-public areas where employees who are off-duty may solicit other employees who are likewise off-duty, subject only to limitations approved by the Board.

It should be emphasized that solicitation between off-duty employees was prohibited by the company only in public areas of the store. The evidence discloses that employees rarely spend their off-duty time in public areas in the store, as discussions between employees in those areas are forbidden. Perhaps another reason is that no refreshments are served there.

██ The order of the Board directing the company to permit non-employee organizers to carry on organizing activities in the employees' restaurants and cafeterias cannot be sustained unless the employees are "uniquely handicapped in matter of self-organization and concerted activity." We hold that the facts established in the instant case do not present unique handicaps to self-organization. The liberal time off policy of the company affords even greater opportunities for self-organization during working hours than is the case in many business and industrial establishments. The employees are not so isolated from outside contacts as to justify non-employee organizers having access to the cafeterias which are set aside for employees only.[9] We conclude that the company rule denying access to employees' restaurants and cafeterias by non-employee union organizers was not in violation of Sec. 8(a) (1) of the Act.

In its decision and in the Board's argument before this court, the Board relies heavily upon the Republic Aviation Corp. v. N. L. R. B. and N. L. R. B. v. LeTourneau Co. of Georgia cases, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372.[10] It seems advisable therefore to analyze just what the Supreme Court decided in those cases. In the first place the cases involved only union organizers who were employees of each company respectively. Each company had rules prohibiting soliciting upon company property. In Republic an employee persisted, after being warned of the rule, in soliciting union membership by passing out application cards to employees on his own time during a lunch period, and he was discharged because of violating the non-solicitation rule. The discharge of employees for wearing union steward buttons was also involved in that case. In LeTourneau two employees were suspended for distributing union literature on their own time on company owned parking lots adjacent to the company's fenced-in plant. This was contrary to a company rule adopted some time previous. In LeTourneau less than 800 out of 2,100 employees walked to work; most of the others used private automobiles, while a much smaller number used public conveyances.

The Supreme Court pointed out, 324 U.S. 793, at page 799, 65 S.Ct. at page 986: "Neither of these (Republic and LeTourneau) is like a mining or lumber camp where the employees pass their rest as well as their work time on the employer's premises, so that union organization must proceed upon the employer's premises or be seriously handicapped." The court also pointed out, 324 U.S. at page 798, 65 S.Ct. at page 985: "Opportunity to organize and proper discipline are both essential elements in a balanced society." The court also said, 324 U.S. at page 798, 65 S.Ct. at

9. In its decision the Board stated, "As noted by the Trial Examiner, in certain instances, notably those concerning lumber camp, maritime, and company town situations, the Board has held that non-employee union representatives must be granted entry to company property where the physical limitations of the employ-ment locale prevent employees from gaining access to outside contacts for long periods of time or except at the cost of considerable effort. It is patent that the Respondent's department store is not such a locale."

10. Hereinafter referred to as Republic and LeTourneau.

page 985, that the principle which the Board is to foster is "the right of employees to organize for mutual aid without employer interference." The court quoted, 324 U.S. at page 801, 65 S.Ct. at page 987, the intermediate report in the Republic case, 51 N.L.R.B. at p. 1195: "Thus, under the conditions obtaining in January 1943, the respondent's employees, working long hours in a plant engaged entirely in war production and expanding with extreme rapidity, were entirely deprived of their normal right to 'full freedom of association' in the plant on their own time, the very time and place uniquely appropriate and almost solely available to them therefor." In contrast, in the case at bar off-duty employees had ample opportunity in the Employees' Cafeteria to solicit union membership from other off-duty employees. The court also quoted, in a footnote, from the Board's decision in Peyton Packing Co., 49 N.L.R.B. 828, 843, "Working time is for work. It is therefore within the province of an employer to promulgate and enforce a rule prohibiting union solicitation during working hours. Such a rule must be presumed to be valid in the absence of evidence that it was adopted for a discriminatory purpose. It is no less true that time outside working hours, whether before or after work, or during luncheon or rest periods, is an employee's time to use as he wishes without unreasonable restraint, although the employee is on company property."

Granting that inconvenience to an employer or some dislocation of property rights may, under some circumstances, be necessary to safeguard the right to collective bargaining, we do not think such circumstances exist in the case at bar. Substantial evidence is lacking to sustain the charging union's contention that non-employee union organizers are unable to contact the employees. In fact, such organizers are permitted to make luncheon appointments and solicit in the company's public restaurants, subject to restrictions which the Board found to be valid. They are permitted to contact employees and solicit them at the five entrances used exclusively by 95% of the regular employees at periods when such entrances are not used by the public generally.

The company had unhappy experiences with non-employee union solicitors. On several occasions such organizers, while carrying on union activities, have been guilty of loud and rowdy conduct in several areas within the store. The conduct of Organizer Clark on one occasion has been mentioned previously. The record contains others.[11]

We have considered the other objections which the company has raised to the Board's order. It would unduly extend this already too lengthy opinion to discuss each in detail. Generally speaking, some substantial evidence sustains the findings of the Board in those respects. As hereinafter set forth, the Board's order will be modified, and as thus modified, enforced.

From that part of the order requiring the company to cease and desist, Paragraphs 1(a), 1(b), 1(c) and 1(d) will be eliminated, and in lieu thereof a new paragraph shall be inserted, reading: "1(a) Prohibiting union organizers from soliciting on behalf of a union in petitioner's private street, known as Holden Court, where the employees involved are on non-working time." Paragraphs 1(e), 1(f), and 1(g) shall become Paragraphs 1(b), 1(c), and 1(d) respectively of the new order. In so far as the Board's order required affirmative action, Paragraphs 2(a), 2(b), 2(c) and 2(d) will be eliminated, and in lieu thereof a new paragraph shall be inserted, reading: "2(a) Rescind immediately its rule against solicitation, in so far as it prohibits union organizers from soliciting employees on behalf of a union on the employees' own time in Holden Court." Paragraphs 2(e)

11. As an illustration, when Organizer Lennon was told distribution of union literature in a corridor was prohibited, he said, "Well, I am not asking for any favors. If you want to make a knock-down and drag-out affair out of it, all right. * * * I work for the union, and if they tell me to go in, I am going to go in."

and 2(f) shall become Paragraphs 2(b) and 2(c) respectively of the new order. The notice to be posted will conform to the modifications as set forth in this opinion.

Order, as modified, enforced.