**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SEAMPRUFE, Inc. (Holdenville Plant), Respondent.**

**No. 4996.**

United States Court of Appeals
Tenth Circuit.
May 4, 1955.

Ruth V. Reel, Washington, D. C. (David P. Findling, Assoc. General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Fannie M. Boyls, Washington, D. C., on the brief), for petitioner.

Karl H. Mueller, Fort Worth, Tex. (Howard Lichtenstein, New York City, and Harold E. Mueller, Fort Worth, Tex., on the brief), for respondent.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This is a petition to enforce an order of the National Labor Relations Board directing Seamprufe, Inc. to cease and desist from prohibiting the use of its private parking lot and adjacent area by non-employee union organizers for distribution of union literature and solicitation of Seamprufe's employees to union membership during the employees' non-working hours, on the ground that such prohibition constituted an unfair labor practice under Section 8(a) (1) of the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. §§ 151 et seq., 158(a) (1).

Seamprufe operates a manufacturing plant located on the outskirts of Holdenville, Oklahoma, a town of approximately 6000 residents. It employs approximately 200 persons on a one-shift basis. Two-thirds of the employees live in Holdenville, and one-third within a radius of from five to thirty miles from the city. None of the employees are represented by a union for collective bargaining purposes.

Late in 1952, representatives of the International Ladies' Garment Workers' Union, AFL, began contacting Seamprufe's employees before and after working hours, on the private parking area provided by Seamprufe for the use of its employees and upon the private sidewalk leading to the rear entrance of the plant. There they greeted the employees and sometimes distributed union literature. After the inception of these visits, Seamprufe posted "No Trespassing" and "Private Road" signs on its premises, and consistently warned the union representatives that they were trespassing on company property and that they must leave the premises. After the Holdenville City Council enacted an ordinance forbidding anyone from going upon private property without the owner's consent under penalty of fine, the union organizers were removed by the city police and arrested for trespassing.

The employees ride to and from work in privately owned automobiles, either singly or in groups. They approach the plant from the east along the public road on the south side of the plant premises. They enter company property driving north on a one-way company-owned road, and park their cars on the company parking facilities at the rear of the plant. After parking their cars the employees walk to the rear entrance of the plant on the private sidewalk connecting with the private road.

On leaving the plant after work, the employees proceed by direction from the parking area driving northeasterly on the private road to the public road intersection along the east side of the plant, turn south onto that road and continue thereon to the intersection with the public road bounding the plant premises on

the south, where they turn left toward Holdenville. There are no stop signs at either intersection, and the Board affirmed the trial examiner's findings that the employees normally do not stop at any point in the vicinity of the plant except in the parking area because the plant is located in a semirural area and the traffic is light. There was testimony to the effect that at the close of work on a typical day in January, 1954, 80 cars containing 225 employees left the parking lot at about a car length apart and at speeds varying from five to twenty-five miles per hour; that approximately ten minutes after cars first began to leave the lot, the entire caravan had departed from the plant area.

Following the rationale of N. L. R. B. v. Le Tourneau Co., 324 U.S. 793, 65 S. Ct. 982, 89 L.Ed. 1372, and succeeding cases, N. L. R. B. v. Caldwell Furniture Co., 4 Cir., 199 F.2d 267, certiorari denied, 345 U.S. 907, 73 S.Ct. 647, 97 L.Ed. 1343; N. L. R. B. v. American Furnace Co., 7 Cir., 158 F.2d 376; N. L. R. B. v. Illinois Tool Works, 7 Cir., 153 F.2d 811, the Board found that the enforcement of Seamprufe's no-trespass rule was unnecessary to the maintenance of plant production and discipline; and further that the nonstop method of driving to and from the plant area made it virtually impossible for union representatives to communicate with employees off Seamprufe's property. It therefore concluded that the enforcement of the non-discriminatory rule deprived the employees of their guaranteed right to self-organization constituting an unfair labor practice under Section 8(a) (1) of the National Labor Relations Act.

The Le Tourneau case and those which followed it were concerned with the balancing of the guaranteed right of the employees to self-organization against the correlative right of the employer to maintain plant production and discipline. In arriving at this balance, the court in the Le Tourneau case very properly concluded that the right of the employees to distribute union literature and solicit employees upon company property was paramount to a no-solicitation rule in the absence of a showing that the enforcement of the rule was essential to the maintenance of plant production and discipline. And no such showing having been made, the court concluded that the enforcement of the company rule constituted an unfair labor practice.

The rationale of the Le Tourneau case was extended to the solicitation of employees by non-employees in a "working area used occasionally by employees and customers" in Marshall Field & Co. v. N. L. R. B., 7 Cir., 200 F.2d 375, 380. But the latter court refused to extend the doctrine to non-employee organizers or solicitors in employees' restaurants and cafeterias in the absence of a showing that by virtue of the isolated character of their employment and residence, the employees were uniquely handicapped in the matter of self-organization and concerted activity. See N. L. R. B. v. Lake Superior Lumber Corp., 6 Cir., 167 F.2d 147.

Calling our attention to the fact that no right of an employee to solicit other employees on company property is involved here, but only the right of a non-employee to go upon company property in violation of a non-discriminatory no-trespass rule, Seamprufe earnestly contends that the rationale of the Le Tourneau case is wholly inapplicable to our facts; that our case rather falls within that part of the Marshall Field case which denied non-employees access to company property in the absence of a showing of restricted accessibility amounting to a handicap.

As we have seen, the fundamental basis for permitting the solicitation of union membership on company property is to vouchsafe the guaranteed right of self-organization. N. L. R. B. v. Le Tourneau, supra. When conducted by employees the solicitation amounts to the exercise of a right subject only to the correlative right of the employer to maintain plant production and discipline. An

employee on company property exercising the right of self-organization does not violate a company no-trespass rule. N. L. R. B. v. Monarch Tool Co., 6 Cir., 210 F.2d 183. But a non-employee labor organizer who comes upon company property in violation of a non-discriminatory no-trespass rule can justify his presence there only insofar as it bears a cogent relationship to the exercise of the employees' guaranteed right of self-organization.

██ Here the union which the non-employee solicitors represented was not the bargaining agent for the employees. Cf. N. L. R. B. v. Monarch Tool Co., supra. Indeed the employees did not belong to any union, and the solicitors were therefore strangers to the right of self-organization, absent a showing of non-accessibility amounting to a handicap to self-organization.

The Board found special circumstances of inaccessibility. But we do not think that conclusion is legally justified by the facts. True, the union organizers could not contact the employees at the entrance or exit to the company property, but these circumstances did not insulate the employees from the union organizers. Unlike the employees of a lumber or mining camp who live and work on company property isolated from outside contacts, as in N. L. R. B. v. Lake Superior Lumber Corp., supra, the employees here lived in or near a small city and were easily accessible to union solicitors. There was no impediment to union solicitation off company property amounting to a deprivation of the right of self-organization.

The no-trespass rule was non-discriminatory. There is no showing of anti-union discrimination as in N. L. R. B. v. Stowe Spinning Co., 336 U.S. 226, 69 S. Ct. 541, 93 L.Ed. 638 and Bonwit Teller, Inc., v. N. L. R. B., 2 Cir., 197 F.2d 640, and its enforcement did not constitute an unfair labor practice.

The enforcement of the Board's order is therefore denied.