**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The BABCOCK and WILCOX COMPANY, Respondent.**

**No. 15311.**

United States Court of Appeals Fifth Circuit.

May 10, 1955.

---

Margaret M. Farmer, Atty., N.L.R.B., Owsley Vose, Associate Ch. Enf. Br., N.L.R.B., David P. Findling, Associate Gen. Counsel, N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Frederick U. Reel, Atty., N.L.R.B., Washington, D. C., for petitioner.

O. B. Fisher, J. D. McLaughlin, and Fisher, McLaughlin & Harrison, Paris, Tex., for respondent.

Before HUTCHESON, Chief Judge, HOLMES, Circuit Judge, and DAWKINS, District Judge.

HUTCHESON, Chief Judge.

Based upon a finding that the respondent had engaged and was engaging in unfair labor practices violative of Section 8(a) (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1), by its maintenance and enforcement of a rule prohibiting distribution of literature on its premises to the extent that such rule barred union representatives from making distribution of union literature on its parking lot, walkways, and drive, the board entered the order [1] which is the subject of this controversy, and, the respondent declining to obey the order, the Board is here seeking its enforcement on the ground that, within the principle established in N.L.R.B. v. Le Tourneau, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1374, the order is valid and must be enforced.

Respondent does not contest the principle established in Le Tourneau's case. Instead, it insists that that case is completely without application here, because involved there was the discharge of employees, members of the union, for distributing union literature in violation of the company's non-distribution rule, while here no action has been taken against any employee of the company, nor is any employee in anywise involved. Pointing out that the sole question presented for decision here is whether union representatives, not employed by or otherwise connected with the company and not working in concert with or upon the solicitation of any of its employees, can

---

1. "Upon the entire record in this case, and pursuant to Section 10(c) of the National Labor Relations Act, as amended [29 U.S.C.A. § 160(c)], the National Labor Relations Board hereby orders that the Respondent, The Babcock and Wilcox Company, Paris, Texas, its officers, agents, successors and assigns, shall:

"1. Cease and desist from:

"(a) Prohibiting the distribution of union literature by union representatives on its parking lot and alongside the walkways from the gatehouse to the parking lot and the drive, provided, however, that the respondent may impose reasonable and non-discriminatory regulations in the interest of plant efficiency and discipline, but not as to deny access to union representatives for the purpose of effecting such distribution.

"(b) Engaging in any like or related acts of conduct which interferes with, restrains, or coerces its employees in the exercise of their right to self-organization, to form labor organizations, to join or assist United Steelworkers of America, C.I.O., or any other labor organization, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, or to refrain from any and all such activities, etc. * * *

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act.

"(a) Rescind immediately its rule prohibiting the distribution of union literature by union representatives on its parking lot at its Paris, Texas, plant, and alongside the walkways from the gatehouse to the parking lot and the drive."

"(b) Post" the usual notices, etc.

solely in their own interest and for their own benefit compel the employer to discriminatorily enforce in their favor a non-discriminatory rule which the examiner and board find has been non-discriminatorily enforced, prohibiting the distribution of any kind of literature upon the employer's premises, it urges upon us that nothing·in the language or spirit of the statute and nothing in any of the decisions at all supports or warrants the Board's cease and desist order.

Secondarily, respondent insists that, if contrary to its firm view, the non-discriminatory enforcement against union representatives of its non-distribution rule is an unfair labor practice, subdivision (b) of the order is not based on but goes far beyond both the findings and the facts in the case.

Because, for the reasons hereafter briefly stated, we agree with respondent that the enforcement of the order must be denied, although we agree also with its secondary proposition, that the order was too broad, it will not be necessary to discuss or deal with it.

In Marshall Field & Co. v. N.L.R.B., 7 Cir., 200 F.2d 375, a case involving activities of both employee and non-employee union members, the Court of Appeals for the Seventh Circuit, in a thoroughly considered and well reasoned opinion, has recently and we think correctly discussed the principle invoked here and analyzed the authoritative cases dealing with it.

Pointing out that the courts have held that Section 7 of the Act, 29 U.S.C.A. § 157, gives a right to a non-employee to enter and solicit union membership on employer's premises under two general situations, the first of which is where there has been discrimination, N. L. R. B. v. Stowe Spinning Co., 336 U.S. 226, 69 S.Ct. 541, 93 L.Ed. 638, and Bonwit-Teller v. N. L. R. B., 2 Cir., 197 F.2d 640, and the second is where

union organization must proceed upon the employer's premises or be seriously handicapped, N. L. R. B. v. Lake Superior Lumber Corp., 6 Cir., 167 F.2d 147, the opinion goes on to present a complete and, we think, entirely correct analysis of the opinion of the Supreme Court in the two controlling cases, Republic Aviation Corp. v. N. L. R. B. (N. L. R. B. v. Le Tourneau), 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1374 and of its teachings and effect. This analysis shows: (1) that those cases involved only union organizers who were employees of each company respectively; (2) that in each case employee organizers were discharged for violation of the non-distribution rule; and (3) that the sole question presented here was not in any way presented, dealt with, or discussed there. This question is whether, on a record devoid of proof that any employees were disciplined or in any manner discriminatorily dealt with by the respondent, or were or desired to be members of the union, or were in any way connected with or interested in the distribution by the union representatives of its literature, the board had authority to require the respondent to institute in favor of non-employee union organizers, complete strangers to it and to its employees, a discriminatory non-enforcement of its non-distribution rule, which the proof showed and examiner and board found had always and uniformly been enforced in a completely non-discriminatory way.

We find ourselves in full agreement with the conclusions announced in the opinion in the Marshall Field case, supra, and with the reasoning upon which those conclusions are based. We find ourselves in full agreement too with the contention of the respondent that the orders of the board in this case are not in accordance with but in direct violation of the letter and spirit of the Labor Management Act, as amended.[2] Indeed we

---

2. "§ 141. Short title; Congressional declaration of purpose and policy.
   "(a) * * *
   "(b) * * * It is the purpose and policy of this chapter, in order to promote the full flow of commerce, to pre-

scribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the

are at a loss to understand how on this record, which contains neither findings, nor evidence furnishing a basis for findings, that the rights or interests of respondent's employees are involved or will be furthered by compelling the respondent to institute a discriminatory application in favor of a particular labor union of its non-distribution rule, the board can take to itself the power to accord the union rights which the statute does not accord it by imposing against the respondent, in favor of a particular union, a servitude on its property which the law, neither in terms nor in spirit, accords to it, in a case, too, where no employee is involved, no employee is complaining, and no rights of employees have been invaded or abridged by the respondent. We think that the order is itself in violation of the Labor Management Act and of the board's duty to impartially enforce it as between union and management in the interest of neither but only in the interest of the employees.

Said Mr. Justice Reed, the organ of the Supreme Court in the Le Tourneau case, dissenting in Stowe's case, supra [336 U.S. 226, 69 S.Ct. 548]:

"It is only when there is a violation through an interference with or a restraining or coercion of employees' rights under § 7 that an unfair labor practice finding may be predicated on the employer's acts. The employer is not required to aid employees to organize. The law forbids only interference."

Whatever may be said of the correctness of this statement as applied to the facts of that case, which involved anti-union discrimination with respect to a company owned meeting hall in a quasi-company town and the discharge of four employees for union membership, it is certainly a correct statement of the law as applied to the facts of this case, and we think we cannot better draw a distinction between this case and Le Tourneau's case than it is drawn in the following quotation from that dissent:

"It has never been held that where the employees do not live on the premises of their employer a union organizer has to be admitted to those premises. The present situation differs from the employer-controlled areas where employees both live and work in that here union organizers may solicit the employees on the streets or in their homes or at public meeting houses within a few miles of their employment. Employees are not isolated beyond the hours of labor from an organizer nor is an organizer denied access to the employees. After an organizer has convinced an employee of the value of union organization, that employee can discuss union relations with his fellow-employees during non-working hours in the mill. This gives opportunity for union membership proliferation. Republic Aviation Corp. v. N.L.R.B. and N.L.R.B. v. Le Tourneau Co. of Georgia, 324 U.S. 793 65 S.Ct. 982, 89 L.Ed. 1374.

"The present case differs from the LeTourneau and Republic cases in that in those cases the problem concerned the right of an employer to maintain discipline *by forbidding employees to foster by personal solicitation union organization on the grounds or in the plant of the company during the employees' non-working time. We held that, unless there were particular circumstances that justified such a regulation to secure discipline and production, the employer must allow such discussion.*" (Emphasis supplied.) N.L.R.B. v. Stowe, 336 U.S. at page 243, 69 S.Ct. at page 549.

Enforcement of the Board's order is denied.

right of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce. * * * "