**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MONSANTO CHEMICAL COMPANY, Respondent.**

No. 14472.

United States Court of Appeals
Ninth Circuit.
July 27, 1955.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., Patrick Walker, Frederick U. Reel, Margaret M. Farmer, Washington, D. C., for petitioner.

Elton L. French, St. Louis, Mo., Alfred J. Schweppe, Seattle, Wash., Peter W. Bauman, Jr., St. Louis, Mo., for respondent.

Before STEPHENS, HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

The General Counsel of the above named Board filed a complaint against respondent charging it with unfair labor practices within the meaning of § 8(a) (1) of the National Labor Relations Act.[1] The complaint arises out of the refusal of the respondent to permit the representatives of a labor union to distribute union literature to company employees on a parking lot which respondent provided for the use of its employees on company property adjacent to the company's chemical plant near Soda Springs, Idaho.

Respondent owns a 500 acre tract of land approximately one mile from Soda Springs, a town of some 2000 inhabitants. Its chemical manufacturing plant is located upon that tract of land and the buildings are approximately half a mile from the state highway which runs past the tract. Its private road leads from the highway to the plant structures. Near the plant office building the re-

[1] "§ 8(a) (1). It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;"

"§ 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3)."

See U.S.C.A. Title 29, §§ 157 and 158.

spondent has provided a parking area for the use of its employees. It is separated by a fence from the plant buildings. There is no public transportation available and all the employees ride to work in private automobiles. After they leave the automobiles in the parking area they enter a building where they change clothes and punch time cards and then pass through a gate to the plant buildings. The company employs approximately 130 employees and operates seven days a week on a three shift basis.

In August, 1953, the respondent promulgated a rule which was incorporated in a manual circulated to its employees reading as follows: "Soliciting: Soliciting funds and selling tickets or any article on company property without approval of the plant manager is prohibited. Petitions: Circulating petitions or posting or distributing any literature on company property without approval of the plant manager is prohibited." On September 28, 1953, an organizer for the union here involved, accompanied by a union business representative, went to the parking area and there requested of the guard in charge of the area the privilege of distributing union literature. They were told that the company rule forbade this. They then interviewed management representatives who refused to grant permission to distribute literature in the parking area stating that the distribution of union or other literature on company property was contrary to the company policy. The union representatives then returned to a point where the private road from the company plant approached the state highway and stationed themselves there for the purpose of undertaking to distribute union literature to employees who drove away from the plant toward the highway. Although a stop sign was placed at this location, yet because there was little traffic on the highway, most of the employees' automobiles did not stop there. Hence on this occasion as on previous occasions when distribution had been attempted at this point by the union representatives they found little or no oppor-

tunity to distribute their literature for the employees simply drove past without stopping. It is conceded that the respondent had and expressed no objection to the distribution of literature on the private road and at that highway intersection. Later the two union representatives returned to the parking area and commenced distribution of literature there. They were then approached and ordered to leave the place and they did so. Again they attempted to distribute literature at the highway intersection but again found that their efforts were unsuccessful because the cars moving toward or from the highway would not stop.

The Board approved the following finding of the Examiner: "Respondent contends and I agree that there is no rule barring the solicitation for union membership by employees on company property; nor is there any evidence that such a policy has been followed. And the above-quoted rule, forbidding distribution of literature on company property, has been uniformly enforced. In addition to the attempt of the union representatives to distribute literature, described below, the record discloses that Respondent, on two occasions, immediately stopped the distribution of other literature in this parking area, once by an automobile dealer and once by high school students, soliciting purchases of automobiles and attendance at a school function respectively. No other distributions of any nature have been attempted or permitted."

Respondent's plant began operation about December 1, 1952. At the time here in question its employees had never been represented by any labor organization. 85% of the employees lived within a radius of 12 miles from the plant and over 67% lived at Soda Springs. The Board found that the respondent asserted its right to control the use of its private property in the manner indicated in good faith, but nevertheless found that by enforcing the rule in question, it had been engaged in conduct violative of § 88(a) (1) of the Act.

Recently two other courts of appeals have had occasion to consider petitions for enforcement where the facts cannot be distinguished from those present here, and in each case enforcement was denied. In N. L. R. B. v. Babcock & Wilcox Co., 5 Cir., 222 F.2d 316, 317, the respondent had a rule prohibiting distribution of literature on its premises including its parking lot, walkways and drive. In that case, as here the persons seeking to make distribution of literature were union representatives "not employed by or otherwise connected with the company and not working in concert with or upon the solicitation of any of its employees." Distinguishing the case of National Labor Relations Board v. Le Tourneau Company of Georgia, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372,[2] on the ground that in that case it was company employees who were seeking and who had been forbidden to distribute literature upon company premises, the court said 222 F.2d 318: "We find ourselves in full agreement too with the contention of the respondent that the orders of the board in this case are not in accordance with but in direct violation of the letter and spirit of the Labor Management Act, as amended. Indeed we are at a loss to understand how on this record, which contains neither findings, nor evidence furnishing a basis for findings, that the rights or interests of respondent's employees are involved or will be furthered by compelling the respondent to institute a discriminatory application in favor of a particular labor union of its non-distribution rule, the board can take to itself the power to accord the union rights which the statute does not accord it by imposing against the respondent, in favor of a particular union, a servitude on its property which the law, neither in terms nor in spirit, accords to it, in a case, too, where no employee is involved, no employee is complaining, and no rights of employees have been invaded or abridged by the respondent."

In National Labor Relations Board v. Seamprufe, Inc., 10 Cir., 222 F.2d 858, the facts were substantially the same in that the complaint charged the respondent with prohibiting the use of its private parking area and adjacent areas by a non-employee union organizer for distribution of union literature and solicitation of employees to union membership during the employees non-working hours. There also it appears that the manufacturing plant was located near a small town; it employed approximately 200 persons, two-thirds of whom lived in town and the balance within a radius of five to thirty miles from the city. All employees rode to and from work in privately owned automobiles. There also the non-stop method of driving from and to the plant made it virtually impossible for the union representative to communicate with the employees as they drove on or off the property. The court refused to enforce the board's order requiring the employer to desist from prohibiting the use of its parking lot by non-employee union organizers and said: "As we have seen, the fundamental basis for permitting the solicitation of union membership on company property is to vouchsafe the guaranteed right of self-organization. N. L. R. B. v. Le Tourneau, supra. When conducted by employees the solicitation amounts to the exercise of a right subject only to the correlative right of the employer to maintain plant production and discipline. An employee on company property exercising the right of self-organization does not violate a company no-trespass rule. * * * But a non-employee labor organizer who comes upon company property in violation of a non-discriminatory no-trespass rule can justify his presence there only insofar as it bears a cogent relationship to the exercise of the employees' guaranteed right of self-organization.

"Here the union which the non-employee solicitors represented was not the bargaining agent for the employees. * * * Indeed the employees did not belong to any union, and the solicitors were therefore strangers to the right of self-organization, absent a showing of

---

2. Decided with Republic Aviation Corp. v. National Labor Relations Board.

non-accessibility amounting to a handicap to self-organization."

It is to be noted that the Court of Appeals for the Fourth Circuit in N. L. R. B. v. Caldwell Furniture Co., 199 F.2d 267, apparently enforced an order of the Labor Board where the order had been directed at the application of a rule prohibiting distribution of union literature by non-employee union representatives. The brief per curiam opinion fails to make note whether the persons prohibited from making the distribution were employees, although the board's report of its decision indicates that they were not.[3] The question here presented does not appear to have been raised in that case, for the court makes no mention of it.

N. L. R. B. v. Monarch Tool Co., 6 Cir., 210 F.2d 183, was also a case in which the court enforced the board's order finding that the enforcement of a company rule prohibiting the distribution of circulars and leaflets on the company's automobile parking areas was an unfair labor practice. Apparently those who participated in the distribution of union literature included employees. The Examiner's report referred to them in one place as "union workers" and in giving an account of the steps taken to secure distribution of literature, the examiner said that after a certain parking lot was opened "principal distribution of union literature and circulars was made by respondent's employees in, or closely adjacent to, the vestibule entrance of the plant. * * *" There is reason to assume that the court treated that as a case involving distribution of literature by employees for it cited as authority for its decision the Le Tourneau case, supra, without any suggestion that the

facts presently before the court were any different than those there involved.[4]

In some cases clearly distinguishable from the one before us it has been held that under § 7 of the Act, a union organizer who is not an employee cannot be denied the privilege of entering and soliciting union membership on the employer's premises. In National Labor Relations Board v. Stowe Spinning Co., 336 U.S. 226, 69 S.Ct. 541, 93 L.Ed. 638, the prohibition which was pronounced an unfair labor practice stemmed from the fact that the employer was discriminating against the union in not permitting a union meeting in the company-owned hall which was generally available for other types of meetings.

Another type of case was forecast in the Le Tourneau case where, 324 U.S. at page 799, 65 S.Ct. at page 986, it was said: "Neither of these is like a mining or lumber camp where the employees pass their rest as well as their work time on the employer's premises, so that union organization must proceed upon the employer's premises or be seriously handicapped."

The precise case arose in National Labor Relations Bd. v. Lake Superior Lumber Corp., 6 Cir., 167 F.2d 147. There the employees and employer were engaged in logging operations in the woods, 17 or 18 miles from the nearest city. After their workday ended at 4 P.M., the employees spent their time in the camps where bunk houses were provided for them. They generally spent their Sundays there too. The unfair labor charges involved the right of the employer (a) to prohibit one of its own employees from soliciting union membership from employees in a bunk house in the evening after work hours; and (b)

---

3. 97 N.L.R.B. 1501. Two other per curiam opinions of the Fourth Circuit are cited as being in accord with the Caldwell Furniture case,—National Labor Relations Board v. Carolina Mills, 190 F.2d 675, and National Labor Relations Board v. Glen Raven Silk Mills, 203 F.2d 946. We find nothing in either opinion which so indicates.

4. In National Labor Relations Board v. Ranco, Inc., 6 Cir., 222 F.2d 543, the same court enforced an order of the board relating to distribution of union literature by "union representatives" on the company's parking lot. If the order related to non-employee representatives, there is nothing in the order to show that the court considered the problem here presented.

to prevent union representatives from entering a bunk house to visit members of the union to solicit other employees. The court enforced the order of the court finding the employer guilty of unfair labor practices in both respects.

Marshall Field & Co. v. National Labor Relations Bd., 7 Cir., 200 F.2d 375, involved questions of the rights both of store employees and of non-employee union representatives to solicit union membership on the premises owned and occupied by a large city department store. The court undertook to review and analyze the Supreme Court's holding in the Le Tourneau case and pointed out that that case dealt only with union organizers who were employees of the company. It noted that the gist of the Supreme Court decision was indicated in its quotation in a footnote from the Board's decision in Peyton Packing Co., 49 N.L.R.B. 828, 843. In referring to the presumed validity of a rule prohibiting union solicitation during working hours, it was indicated that it was competent for the board to treat as an unreasonable restraint a rule prohibiting employees outside working hours to make solicitation on company property. This appears from the following language quoted by the Supreme Court from the board's decision in that case, 200 F.2d at page 382: " 'It is no less true that time outside working hours, whether before or after work, or during luncheon or rest periods, is an employee's time to use as he wishes without unreasonable restraint, although the employee is on company property.' "

The court of appeals declined to apply so broad a rule as that to the complaints respecting the non-employee union solicitors in the Marshall Field case. It did, however, uphold the board's ruling that it was an unfair labor practice for the employer to prohibit the union organizers to solicit on the company's private street known as Holden Court. This street the opinion discloses was a private road or

alley way separating the two portions of the store's main building on the ground floor. The court said of this, 200 F.2d at page 380: "This is primarily a working area used occasionally by employees and customers. However, it does partake of the nature of a city street, even though owned by the company, and we think there is substantial evidence to sustain the findings of the Board with respect to Holden Court." [5] It will be noted that as a pedestrian and customer means of access to the Marshall Field store, Holden Court had some resemblance to the access road upon which the union organizers in this case made their attempts to distribute literature.

We note here that the examiner and the Board which adopted his findings did not undertake to base their conclusions upon any inference or presumption similar to that expressed in the language which we have quoted above from the Board's decision in the Peyton Packing Co. case. The reason for the decision here was expressed as follows: "The Board and courts have recognized that employees and a labor organization do not have an absolute right to the use of company property for the distribution of union literature. But it has likewise been held that where, as here, it is virtually impossible or unreasonably difficult for a labor organization to disseminate literature to employees off the premises of the employer, the Act protects the right to carry on such distribution on company property." In short, the Board appears to have predicated its conclusions upon the assumption that this was a case like the Lake Superior Lumber Corp. case, supra, in that it was "virtually impossible or unreasonably difficult" to reach employees off the premises of the employer.

The record here fails to sustain any such conclusion. Wright, the business agent of the union, one of the two union representatives who sought to distribute the literature on the parking lot, testi-

5. The Board said of this area: "This private street, Holden Court, traverses the center of the respondent's store at street level. It is open to the public for pedestrian use." Marshall Field & Co., 98 N.L.R.B. 88, 93.

fied that he had made no attempt to contact employees in Soda Springs where 67% of the employees lived. He testified that he had made no attempt to contact employees by mail. The personnel manager of the respondent company testified that the company had not been asked for the names or addresses of its employees and this testimony was not contradicted.

The record further shows that all employees customarily wore jackets bearing the name "Monsanto" across the backs; that they wore these jackets when they left the plant and as they went about their personal affairs in the City of Soda Springs and elsewhere. These jackets were furnished the employees in suitable weights for both winter and summer use. It is plain therefore that there was no showing of virtual impossibility or unreasonable difficulty in identifying or reaching the employees or enough of them so that the self-organization contemplated by § 7 of the Act could be initiated. In addition, Phelan, the Grand Lodge representative, the other union organizer who sought to make use of the parking lot, testified "We have communication with some of the employees practically all the time."

If this contact existed and yet the union representatives were unable to disclose any authority from any employees to carry on the organization of a union on the employees' behalf, that fact alone is significant. It demonstrates that the record fails to show that the company's refusal to these non-employee union organizers was in some respect a denial of rights granted the employees by § 7 of the Act.[6]

It is to the employees that rights are granted by § 7. Notwithstanding the section also grants them the right to "refrain from any or all of such activities", it may fairly be said that in a situation such as that presented by the Lake Superior Lumber Corp. case, supra, the employees' rights include the right to have union organizers approach them. But the facts here do not present that kind of case. As stated in the Seamprufe case, supra, "Unlike the employees of a lumber or mining camp who live and work on company property isolated from outside contacts, as in N. L. R. B. v. Lake Superior Lumber Corp., supra, the employees here lived in or near a small city and were easily accessible to union solicitors. There was no impediment to union solicitation off company property amounting to a deprivation of the right of self-organization."

The enforcement of the Board's order is denied.

HEALY, Circuit Judge (dissenting).

It is implicit in the majority opinion that had the distributors of union literature been *employees* of respondent, then enforcement as against them of respondent's prohibitory rule would amount to an unfair labor practice. To me, the principle involved is the same whether the distributors were employees furthering the cause of unionization, or whether

---

6. Mr. Justice Reed, who wrote the opinion in the Le Tourneau case, should know as well as anyone what that case held. Speaking of it, he said in his dissent in National Labor Relations Board v. Stowe Spinning Co., supra, 336 U.S. at page 243, 69 S.Ct. at page 549: "It has never been held that where the employees do not live on the premises of their employer a union organizer has to be admitted to those premises. The present situation differs from the employer-controlled areas where employees both live and work in that here union organizers may solicit the employees on the streets or in their homes or at public meeting houses within a few miles of their employment. Employees are not isolated beyond the hours of labor from an organizer nor is an organizer denied access to the employees. After an organizer has convinced an employee of the value of union organization, that employee can discuss union relations with his fellow-employees during non-working hours in the mill. This gives opportunity for union membership proliferation. Republic Aviation Corp. v. National Labor Relations Board and National Labor Relations Board v. Le Tourneau Company of Georgia, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372."

they were merely union representatives having the same purpose. In either event the distributors would be pursuing the same end, namely, to advise the workers at the plant of their rights under the Act and of the purported advantages of unionization.

I think the Board's order is supported in law and that a decree of enforcement should be entered.