**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ARMSTRONG TIRE AND RUBBER COMPANY, TEST FLEET BRANCH, Respondent.**

**No. 17168.**

United States Court of Appeals Fifth Circuit.

Jan. 30, 1959.

---

Elmer P. Davis, Chief Law Officer, Fort Worth, Tex., Marcel Mallet-Prevost, Asst. Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, National Labor Relations Board, Washington, D. C., for petitioner.

Richard C. Keenan, New Orleans, La., for respondent.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order issued against respondent November 8, 1957.[1] The violations of § 8(a)(1) of the Act, 29 U.S.C.A. § 158(a)(1), were found by the Board to have been committed during 1956.[2] There being no union representing respondent's employees, the charge was filed by an employee, Louie E. Wright, upon which the General Counsel issued the complaint here involved.

Respondent employed a large number of passenger car drivers, truck drivers, technicians, mechanics and clerical employees at its test fleet branch in San Antonio, Texas. The complaint before us relates only to employees whose duty was to test tires by driving automobiles and trucks over the public roads. These drivers worked around the clock Monday through Friday in three shifts. Each shift took a thirty minute nonpaid lunch period and, in addition, each of the drivers was accustomed to make several short stops along the road "for the purpose of checking tire pressure, tightening tire lugs, drinking coffee and relaxing." Truck drivers would also normally stop a short distance from respondent's garage and line themselves up in accordance with garage service requirements so that they would reach the garage in a certain order and on time. At that stop the drivers cleaned their trucks and made out reports, and frequently there was additional time, which they spent merely in waiting. The motor vehicles driven by these employees were normally overweight and, in general, the purpose of the tests was to wear out the tires, noting their performance under road conditions.

No restriction was placed upon the right of employees to solicit others to union membership prior to or after working hours, or during lunch periods. The complaint which the Board enforced challenged the respondent's non-solicitation rule[3] as it was applied to the scheduled tire-check and rest stops and to the unscheduled last stop of uncertain duration made by the trucks as they approached the garage at the end of the runs. The General Counsel contends that, under our decision in Olin Industries, Inc., Winchester Repeating Arms Co. Division v. N. L. R. B., 5 Cir., 1951, 191 F.2d 613, the respondent illegally enforced the no solicitation rule during the portions of these stops when

1. The Board's decision and order is reported at 119 N.L.R.B. No. 52.

2. The Board had found respondent guilty of certain unfair labor practices during an effort at union organization during 1953, and we enforced its findings, N. L. R. B. v. Armstrong Tire & Rubber Co., 5 Cir., 1955, 228 F.2d 159. Additional charges were filed against respondent covering its activities in 1954, but the Board dismissed the complaint based upon them, 111 N.L.R.B. 998. The facts involved in those proceedings were considered as "background" in the present action.

3. "The circulation of petitions, the passing out of membership cards, and any other solicitation on Company time without permission of the Manager."

the employees had no work to perform and were merely resting, sometimes getting together and engaging in "bull sessions."

Respondent counters this claim with the contention that ample opportunity was given for solicitation during the employees' lunch period and time before and after work; that the roadside stops (other than the lunch period) were not within the holding of the Olin case since "they were consumed partially in rest and partially in work." It claims further that even the portion of these periods not devoted to work should be spent by the employees in rest and relaxation and not in discussion of controversial subjects, because of the hazardous nature of their employment and the necessity that they keep their minds calm and free from the excitement or agitation naturally produced by discussion of such subjects, and their nerves relaxed and their reactions alert. This contention was based upon what respondent claimed was its experience that, unless these rules were followed, accidents increased.

The Board found the employee Wright had been wrongfully warned against violating this rule, and that he was eventually discharged because of his union activity and not because, as claimed by respondent, he had made a false report to it concerning a minor accident he had with the car of another employee. The Board also found that this same rule had been discriminatorily enforced against one Condrin and against the employees generally. Upon these findings, the Board entered its order that respondent cease and desist from such enforcement of the order and that Wright be reinstated to his former, or a substantially equivalent, position without prejudice to his seniority or other rights and privileges, and that he be made whole. The order condemned generally actions on respondent's part discouraging membership in labor organizations.

The law governing proceedings such as this one has been fully declared in recent decisions, e. g., Olin Industries, supra; Republic Aviation Corp. v. N. L. R. B., 1945, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 557, and N. L. R. B. v. Babcock & Wilcox Company, 1956, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975, affirming the decision of this Court in the same case, 5 Cir., 222 F.2d 316, and the decision of the Court of the Tenth Circuit in N. L. R. B. v. Seamprufe, Inc., 10 Cir., 1955, 222 F.2d 858, and reversing the enforcement order granted by the Second Circuit in N. L. R. B. v. Local No. 1261, etc., 1955, 222 F.2d 542. The enforcement order is based upon its findings of fact approving largely the report of the Trial Examiner and not upon any crucial point of law. A careful reading of the record convinces us that the Board's findings are supported by substantial evidence and that its order should be enforced.

The Board was sympathetic [4] with respondent's problems arising from the dangerous character of the work performed by the test drivers and did not, as the portion quoted supra demonstrates, base its order on a rejection of the princi-

4. " * * * so we recognize, as the Respondent contends, that safety of operation is a legitimate concern of an employer, and may, under some circumstances, justify the promulgation of rules which would impinge upon the normal exercise of rights of self-organization. However, the burden rests upon an employer to establish that safety conditions actually require an invasion of the normal exercise by his employees of self-organizational rights during nonworking time. In this case, however, the evidence does not convince us that it was necessary to impose a rule interfering with the normal right of employees to discuss unionization during nonworking periods. * * * Moreover, there is little evidence in the record demonstrating that there was sufficient conflict among the drivers on the road to impair materially their ability to perform their duties safely. Assuming that, as the Respondent asserts, its operation may involve an element of hazard, we nevertheless find the evidence insufficient to establish that the effect of non-application of the no-solicitation rule to the drivers' rest stop is in fact to increase the hazardous nature of the work involved."

ple contended for by respondent, but only on failure of proof.

We see no good purpose to be served by a detailed analysis of the evidence and hold merely that the Board was justified by the evidence in reaching the conclusion it did, and its order is

Enforced.