## LeTOURNEAU CO. OF GEORGIA v. NATIONAL LABOR RELATIONS BOARD.

### No. 10954.

Circuit Court of Appeals, Fifth Circuit.

June 23, 1944.

A. C. Wheeler, of Gainesville, Ga., and Clifton W. Brannon and C. M. McClure, both of Toccoa, Ga., for petitioner.

Alvin J. Rockwell, General Counsel, National Labor Relations Board, and Howard Lichtenstein, Asst. General Counsel, National Labor Relations Board, both of Washington, D. C., and Harold A. Cranefield, Regional Atty., National Labor Relations Board, of Detroit, Mich., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The petitioner seeks to set aside an order of the National Labor Relations Board which required the petitioner to cease and desist from discouraging membership of its employees in United States Steel Workers of America, or discriminating in regard to their hire and tenure of employment, or in any manner interfering with, restraining or coercing employees in their right to self-organization; and to rescind a rule of petitioner against distributing literature in so far as it prohibits distribution of union literature by employees outside the gates of the plant and in the parking lots; and to make whole employees Ferguson and Ayers for two days suspension for violation of the rule; and to post appropriate notices.

There is no question of fact, and only one question of law, to-wit: Whether the impartial enforcement of the rule, made long before union activities began, is, as to union literature, a violation of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. The complaint asserted the suspension of the two employees was discriminatory and because of union activity, but the Board found otherwise on that point.

The main facts are that petitioner is a large manufacturer of earth-moving machinery, employing 2100 employees who come to their work in automobiles and busses to a main entrance gate of the enclosed plant near the highway. Between the enclosure and the highway the petitioner graded and surfaced a parking lot and a smaller similar lot just across the highway, both lots being on its lands. In 1941 thefts

of articles from the parked cars began, thought to be due to a practice of placing advertising matter in them. The lots were also littered up thereby. Petitioner thereupon put the parking lots under military guards, who also kept them clean, and were available to protect the plant, which was engaged in work important to the war effort, in case of emergency. On July 3, 1941, the captain of the guard, presumably with petitioner's authority, and consistently with the general policy of petitioner manifested by notices posted in the plant, and in a book of rules given employees, issued a rule that "No merchant, concern, company, or individual will be permitted to distribute, post, or otherwise circulate handbills, posters, or any literature of any description on company property without securing permission from the personnel department." The Board finds that "Since July 3, 1941, the plant protection force has strictly enforced the no-distributing-no-posting rule on the respondent's premises, including the two parking lots."

In February, 1943, the Congress of Industrial Organizations attempted to organize the employees. Petitioner posted an appropriate notice that the joining or not joining of the union was the employee's right, with which petitioner would not interfere or permit others to interfere, and any contrary rumor was untrue. On the day of the election, which the C.I.O. lost, Ferguson handed out some C.I.O. handbills on the larger parking lot after work hours, without permission of the personnel department. He was stopped by the guard and on the next day suspended for two days for violation of the rule. A few months later the United Steel Workers of America undertook further to organize the employees. Ayers asked permission of the personnel department to distribute literature and was refused. Supposing that the smaller lot across the highway was not Company premises, he distributed it there. The guard stopped him and in due course he was suspended for two days also. As has been stated, the Board has found the suspensions were not for union activity but in the impartial enforcement of the rule.

The Board, recognizing the rule as valid within the enclosure, thought it an unreasonable interference with the employees' right to organize, and so an unfair labor practice, when applied to employees not on duty and outside the enclosure on the parking lots. These Company rules, as posted and as written in the employees' handbooks, had no special reference to union organization and were made before any was attempted. But their broad terms included union or anti-union literature as well as any other. Under the National Labor Relations Act it is well settled that the employer cannot "interfere" with any effort of the employees to organize, either to encourage or prevent it. He cannot facilitate the organization even by providing a meeting place without incurring the charge that he is attempting to dominate it. He can prohibit organization efforts taking place during work time and within the plant, as the Board concedes. The reasons for this are well stated in Midland Steel Products Co. v. National Labor Relations Board, 6 Cir., 113 F.2d 800. The rule there upheld was quite similar to the rule before us, prohibiting solicitation on Company property, unless approved by the management. Unfortunately organization efforts often produce excitement and feeling among the employees, even exhibitions of violence. Since the employer properly has no part or interest in such efforts, he is not required by the law to furnish a theater for them. It may be wisest and best for all concerned that the employees discuss and act on the matter of their own organization elsewhere than on the employer's property. We think he may so insist, and therefore may enforce as against would-be organizers such a rule as we have here, if not designed to impede organization and not discriminatorily applied.[1] Finding no provision, express or implied, in the National Labor Relations Act which requires an employer to permit organization efforts on his premises, we cannot hold this rule unlawful as applied to these parking lots. They were not only owned by petitioner, but were improved as a necessary part of the plant and adjoined it. Though not enclosed by the fence, they were guarded and serviced just as the area within was. The rule, it may be noted, did not bar Ferguson and Ayer from speaking to fellow employees about organizing, or making appointments for meetings elsewhere, or even on the parking lots. It by no means

---

[1] The case of National Labor Relations Board v. Cities Service Oil Co., 2 Cir., 122 F.2d 149, involved seamen on duty on a ship in port for a day only, and was exceptional as the court explains. Organization was not in progress but was complete, and the right to present grievances was the right interfered with.

stopped all organizational activity, but only the distribution of literature on Company property. The suspensions, as penalties for its breach, not having been done discriminatorily because of the union activity involved, do not constitute unfair labor practices. The Board's order, we conclude, is not according to law and must be set aside.

Petition sustained.