## REPUBLIC AVIATION CORP. *v.* NATIONAL LABOR RELATIONS BOARD.

NO. 226.

Argued January 10, 1945.—Decided April 23, 1945.

Mr. J. Edward Lumbard, Jr., with whom Messrs. John J. Ryan, Frederick M. Davenport, Jr., Ralstone R. Irvine and Theodore S. Hope were on the brief, for petitioner in No. 226.

Miss Ruth Weyand, with whom Solicitor General Fahy, Messrs. Alvin J. Rockwell and Mozart G. Ratner were on the briefs, for the National Labor Relations Board. Mr. Robert L. Stern also was on the brief for the Board in No. 226.

Mr. A. C. Wheeler, with whom Mr. Clifton W. Brannon was on the brief, for respondent in No. 452.

MR. JUSTICE REED delivered the opinion of the Court.

In the Republic Aviation Corporation case, the employer, a large and rapidly growing military aircraft manufacturer, adopted, well before any union activity at the plant, a general rule against soliciting which read as follows:

"Soliciting of any type cannot be permitted in the factory or offices."

The Republic plant was located in a built-up section of Suffolk County, New York. An employee persisted after being warned of the rule in soliciting union membership in the plant by passing out application cards to employees on his own time during lunch periods. The employee was discharged for infraction of the rule and, as the National Labor Relations Board found, without discrimination on the part of the employer toward union activity.

Three other employees were discharged for wearing UAW-CIO union steward buttons in the plant after being requested to remove the insignia. The union was at that time active in seeking to organize the plant. The reason which the employer gave for the request was that, as the union was not then the duly designated representative of the employees, the wearing of the steward buttons in the plant indicated an acknowledgment by the management of the authority of the stewards to represent the employees in dealing with the management and might impinge upon the employer's policy of strict neutrality in union matters and might interfere with the existing grievance system of the corporation.

The Board was of the view that wearing union steward buttons by employees did not carry any implication of recognition of that union by the employer where, as here, there was no competing labor organization in the plant. The discharges of the stewards, however, were found not to be motivated by opposition to the particular union or, we deduce, to unionism.

The Board determined that the promulgation and enforcement of the "no solicitation" rule violated § 8 (1) of the National Labor Relations Act as it interfered with, restrained and coerced employees in their rights under § 7 and discriminated against the discharged employee

under § 8 (3).[1]  It determined also that the discharge of the stewards violated § 8 (1) and 8 (3).  As a consequence of its conclusions as to the solicitation and the wearing of the insignia, the Board entered the usual cease and desist order and directed the reinstatement of the discharged employees with back pay and also the rescission of "the rule against solicitation in so far as it prohibits union activity and solicitation on company property during the employees' own time."  51 N. L. R. B. 1186, 1189.  The Circuit Court of Appeals for the Second Circuit affirmed, 142 F. 2d 193, and we granted certiorari, 323 U. S. 688, because of conflict with the decisions of other circuits.[2]

In the case of *Le Tourneau Company of Georgia,* two employees were suspended two days each for distributing union literature or circulars on the employees' own time on company owned and policed parking lots, adjacent to the company's fenced-in plant, in violation of a long standing and strictly enforced rule, adopted prior to union organization activity about the premises, which read as follows: "In the future no Merchants, Concern, Company, or In-

---

[1] 49 Stat. 449, 452:

"Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection.

"Sec. 8. It shall be an unfair labor practice for an employer—

"(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7.

.        .        .        .        .

"(3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: . . ."

[2] *Midland Steel Products Co.* v. *Labor Board,* 113 F. 2d 800; *Labor Board* v. *Williamson-Dickie Mfg. Co.,* 130 F. 2d 260, 267; *Boeing Airplane Co.* v. *Labor Board,* 140 F. 2d 423; *Le Tourneau Co.* v. *Labor Board,* 143 F. 2d 67.

dividual or Individuals will be permitted to distribute, post, or otherwise circulate handbills or posters, or any literature of any description, on Company property without first securing permission from the Personnel Department."

The rule was adopted to control littering and petty pilfering from parked autos by distributors. The Board determined that there was no union bias or discrimination by the company in enforcing the rule.

The company's plant for the manufacture of earthmoving machinery and other products for the war is in the country on a six thousand acre tract. The plant is bisected by one public road and built along another. There is one hundred feet of company-owned land for parking or other use between the highways and the employee entrances to the fenced enclosures where the work is done, so that contact on public ways or on non-company property with employees at or about the establishment is limited to those employees, less than 800 out of 2100, who are likely to walk across the public highway near the plant on their way to work, or to those employees who will stop their private automobiles, buses or other conveyances on the public roads for communications. The employees' dwellings are widely scattered.

The Board found that the application of the rule to the distribution of union literature by the employees on company property which resulted in the lay-offs was an unfair labor practice under § 8 (1) and 8 (3). Cease and desist, and rule rescission orders, with directions to pay the employees for their lost time, followed. 54 N. L. R. B. 1253. The Circuit Court of Appeals for the Fifth Circuit reversed the Board, 143 F. 2d 67, and we granted certiorari because of conflict with the *Republic* case. 323 U. S. 698.

These cases bring here for review the action of the National Labor Relations Board in working out an adjustment between the undisputed right of self-organization

assured to employees under the Wagner Act and the equally undisputed right of employers to maintain discipline in their establishments. Like so many others, these rights are not unlimited in the sense that they can be exercised without regard to any duty which the existence of rights in others may place upon employer or employee. Opportunity to organize and proper discipline are both essential elements in a balanced society.

The Wagner Act did not undertake the impossible task of specifying in precise and unmistakable language each incident which would constitute an unfair labor practice. On the contrary, that Act left to the Board the work of applying the Act's general prohibitory language in the light of the infinite combinations of events which might be charged as violative of its terms. Thus a "rigid scheme of remedies" is avoided and administrative flexibility within appropriate statutory limitations obtained to accomplish the dominant purpose of the legislation. *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 194. So far as we are here concerned, that purpose is the right of employees to organize for mutual aid without employer interference. This is the principle of labor relations which the Board is to foster.

The gravamen of the objection of both *Republic* and *Le Tourneau* to the Board's orders is that they rest on a policy formulated without due administrative procedure. To be more specific it is that the Board cannot substitute its knowledge of industrial relations for substantive evidence. The contention is that there must be evidence before the Board to show that the rules and orders of the employers interfered with and discouraged union organization in the circumstances and situation of each company. Neither in the *Republic* nor the *Le Tourneau* cases can it properly be said that there was evidence or a finding that the plant's physical location made solicitation away from company property ineffective to reach prospective union

members. Neither of these is like a mining or lumber camp where the employees pass their rest as well as their work time on the employer's premises, so that union organization must proceed upon the employer's premises or be seriously handicapped.[3]

The National Labor Relations Act creates a system for the organization of labor with emphasis on collective bargaining by employees with employers in regard to labor relations which affect commerce. An essential part of that system is the provision for the prevention of unfair labor practices by the employer which might interfere with the guaranteed rights. The method for prevention of unfair labor practices is for the Board to hold a hearing on a complaint which has been duly served upon the employer who is charged with an unfair labor practice. At that hearing the employer has the right to file an answer and to give testimony. This testimony, together with that given in support of the complaint, must be reduced to writing and filed with the Board. The Board upon that testimony is directed to make findings of fact and dismiss the complaint or enter appropriate orders to prevent in whole or in part the unfair practices which have been charged. Upon the record so made as to testimony and issues, courts are empowered to enforce, modify or set aside the Board's orders,[4] subject to the limitation that the findings of the Board as to facts, if supported by evidence, are conclusive.

Plainly this statutory plan for an adversary proceeding requires that the Board's orders on complaints of unfair

---

[3] See Sixth Annual Report, National Labor Relations Board, pp. 43, 44; Re Harlan Fuel Co., 8 N. L. R. B. 25, 28, 63; Re West Kentucky Coal Co., 10 N. L. R. B., 88, 105–6, 133; Re Weyerhaeuser Timber Co., 31 N. L. R. B. 258, 262, 267, 270; cf. Labor Board v. Waterman S. S. Co., 309 U. S. 206, 224.

[4] Labor Board v. Jones & Laughlin, 301 U. S. 1; 49 Stat. 449, 452–455, §§ 7 to 10 inclusive.

labor practices be based upon evidence which is placed before the Board by witnesses who are subject to cross-examination by opposing parties.[5] Such procedure strengthens assurance of fairness by requiring findings on known evidence. *Ohio Bell Tel. Co.* v. *Public Utilities Comm'n,* 301 U. S. 292, 302; *United States* v. *Abilene & Southern R. Co.,* 265 U. S. 274, 288. Such a requirement does not go beyond the necessity for the production of evidential facts, however, and compel evidence as to the results which may flow from such facts. *Market Street R. Co.* v. *Railroad Comm'n,* 324 U. S. 548, 559. An administrative agency with power after hearings to determine on the evidence in adversary proceedings whether violations of statutory commands have occurred may infer within the limits of the inquiry from the proven facts such conclusions as reasonably may be based upon the facts proven. One of the purposes which lead to the creation of such boards is to have decisions based upon evidential facts under the particular statute made by experienced officials with an adequate appreciation of the complexities of the subject which is entrusted to their administration. *Labor Board* v. *Virginia Power Co.,* 314 U. S. 469, 479; *Labor Board* v. *Hearst Publications,* 322 U. S. 111, 130.

In the *Republic Aviation Corporation* case the evidence showed that the petitioner was in early 1943 a non-urban manufacturing establishment for military production which employed thousands. It was growing rapidly. Trains and automobiles gathered daily many employees for the plant from an area on Long Island, certainly larger than walking distance. The rule against solicitation was introduced in evidence and the circumstances of its violation by the dismissed employee after warning was detailed.

---

[5] This is not a statutory administrative hearing to reach a basis for action akin to legislation. See *Norwegian Nitrogen Co.* v. *United States,* 288 U. S. 294, 304–319.

As to the employees who were discharged for wearing the buttons of a union steward, the evidence showed in addition the discussion in regard to their right to wear the insignia when the union had not been recognized by the petitioner as the representative of the employees. Petitioner looked upon a steward as a union representative for the adjustment of grievances with the management after employer recognition of the stewards' union. Until such recognition petitioner felt that it would violate its neutrality in labor organization if it permitted the display of a steward button by an employee. From its point of view, such display represented to other employees that the union already was recognized.

No evidence was offered that any unusual conditions existed in labor relations, the plant location or otherwise to support any contention that conditions at this plant differed from those occurring normally at any other large establishment.

The *Le Tourneau Company of Georgia* case also is barren of special circumstances. The evidence which was introduced tends to prove the simple facts heretofore set out as to the circumstances surrounding the discharge of the two employees for distributing union circulars.

These were the facts upon which the Board reached its conclusions as to unfair labor practices. The Intermediate Report in the *Republic Aviation* case, 51 N. L. R. B. at 1195, set out the reason why the rule against solicitation was considered inimical to the right of organization.[6]

---

[6] 51 N. L. R. B. 1195:

"Thus, under the conditions obtaining in January 1943, the respondent's employees, working long hours in a plant engaged entirely in war production and expanding with extreme rapidity, were entirely deprived of their normal right to 'full freedom of association' in the plant on their own time, the very time and place uniquely appropriate and almost solely available to them therefor. The respondent's rule is therefore in clear derogation of the rights of its employees guaranteed by the Act."

This was approved by the Board. *Id.,* 1186. The Board's reasons for concluding that the petitioner's insistence that its employees refrain from wearing steward buttons appear at page 1187 of the report.[7]  In the *Le Tourneau Company* case the discussion of the reasons underlying the findings was much more extended. 54 N. L. R. B. 1253, 1258, *et seq.*  We insert in the note below a quotation which shows the character of the Board's opinion.[8]  Furthermore, in both opinions of the Board full citation of

[7] We quote an illustrative portion. 51 N. L. R. B. 1187–88: "We do not believe that the wearing of a steward button is a representation that the employer either approves or recognizes the union in question as the representative of the employees, especially when, as here, there is no competing labor organization in the plant. Furthermore, there is no evidence in the record herein that the respondent's employees so understood the steward buttons or that the appearance of union stewards in the plant affected the normal operation of the respondent's grievance procedure. On the other hand, the right of employees to wear union insignia at work has long been recognized as a reasonable and legitimate form of union activity, and the respondent's curtailment of that right is clearly violative of the Act."

[8] 54 N. L. R. B. at 1259–60: "As the Circuit Court of Appeals for the Second Circuit has held, 'It is not every interference with property rights that is within the Fifth Amendment . . . Inconvenience, or even some dislocation of property rights, may be necessary in order to safeguard the right to collective bargaining.' The Board has frequently applied this principle in decisions involving varying sets of circumstances, where it has held that the employer's right to control his property does not permit him to deny access to his property to persons whose presence is necessary there to enable the employees effectively to exercise their right to self-organization and collective bargaining, and in those decisions which have reached the courts, the Board's position has been sustained. Similarly, the Board has held that, while it was 'within the province of an employer to promulgate and enforce a rule prohibiting union solicitation during working hours,' it was 'not within the province of an employer to promulgate and enforce a rule prohibiting union solicitation by an employee outside of working hours, although on company property,' the latter restriction being deemed an unreasonable impediment to the exercise of the right to self-organization."

authorities was given, including *Matter of Peyton Packing Co.*, 49 N. L. R. B. 828, 50 N. L. R. B. 355, hereinafter referred to.[9]

The Board has fairly, we think, explicated in these cases the theory which moved it to its conclusions in these cases. The excerpts from its opinions just quoted show this. The reasons why it has decided as it has are sufficiently set forth. We cannot agree, as Republic urges, that in these present cases reviewing courts are left to "sheer acceptance" of the Board's conclusions or that its formulation of policy is "cryptic." See *Eastern-Central Assn.* v. *United States*, 321 U. S. 194, 209.

Not only has the Board in these cases sufficiently expressed the theory upon which it concludes that rules against solicitation or prohibitions against the wearing of insignia must fall as interferences with union organization, but, in so far as rules against solicitation are concerned, it had theretofore succinctly expressed the requirements of proof which it considered appropriate to outweigh or overcome the presumption as to rules against solicitation. In the *Peyton Packing Company* case, 49 N. L. R. B. 828, at 843, hereinbefore referred to, the presumption adopted by the Board is set forth.[10]

---

[9] 51 N. L. R. B. 1186, 1187, at note 1 and 54 N. L. R. B. 1253, 1260, at notes 6 and 7.

[10] 49 N. L. R. B. at 843–44: "The Act, of course, does not prevent an employer from making and enforcing reasonable rules covering the conduct of employees on company time. Working time is for work. It is therefore within the province of an employer to promulgate and enforce a rule prohibiting union solicitation during working hours. Such a rule must be presumed to be valid in the absence of evidence that it was adopted for a discriminatory purpose. It is no less true that time outside working hours, whether before or after work, or during luncheon or rest periods, is an employee's time to use as he wishes without unreasonable restraint, although the employee is on company property. It is therefore not within the province of an employer to promulgate and enforce a rule prohibiting union solicitation

Although this definite ruling appeared in the Board's decisions, no motion was made in the court by Republic or Le Tourneau after the Board's decisions for leave to introduce additional evidence to show unusual circumstances involving their plants or for other purposes.[11]   Such a motion might have been granted by the Board or court in view of the fact that the Intermediate Report in the *Republic Aviation* case was dated May 21, 1943, and that in *Le Tourneau* November 11, 1943, while the opinion in the *Peyton Packing Company* case was given as late as May 18, 1943.   We perceive no error in the Board's adoption of this presumption.[12]   The Board had previously considered similar rules in industrial establishments and the definitive form which the *Peyton Packing Company* decision gave to the presumption was the product of the Board's appraisal of normal conditions about industrial establishments.[13]   Like a statutory presumption or one established

by an employee outside of working hours, although on company property.   Such a rule must be presumed to be an unreasonable impediment to self-organization and therefore discriminatory in the absence of evidence that special circumstances make the rule necessary in order to maintain production or discipline."

[11] 49 Stat. 454–55, § 10 (e):

". . . If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the transcript. . . ."

[12] Compare *Labor Board* v. *Regal Knitwear Co.*, 140 F. 2d 746, affirmed on another ground, *Regal Knitwear Co.* v. *Labor Board*, 324 U. S. 9; *Crichton* v. *United States*, 56 F. Supp. 876, 880.

[13] *Re Denver Tent & Awning Co.*, 47 N. L. R. B. 586, 588; *Re United States Cartridge Co.*, 47 N. L. R. B. 896, 897; *Re Carter Carburetor Corp.*, 48 N. L. R. B. 354, 356; *Re Scullin Steel Co.*, 49 N. L. R. B. 405, 411.   See also for comparison the later cases of *Re Dallas Tank & Welding Co.*, 51 N. L. R. B. 1315; *Re Johnson-Stephens & Shinkle Shoe Co.*, 54 N. L. R. B. 189, 192.

by regulation, the validity, perhaps in a varying degree, depends upon the rationality between what is proved and what is inferred.[14]

In the *Republic Aviation* case, petitioner urges that irrespective of the validity of the rule against solicitation, its application in this instance did not violate § 8 (3), note 1, *supra*, because the rule was not discriminatorily applied against union solicitation but was impartially enforced against all solicitors. It seems clear, however, that if a rule against solicitation is invalid as to union solicitation on the employer's premises during the employee's own time, a discharge because of violation of that rule discriminates within the meaning of § 8 (3) in that it discourages membership in a labor organization.

*Republic Aviation Corporation* v. *National Labor Relations Board* is affirmed.

*National Labor Relations Board* v. *Le Tourneau Company of Georgia* is reversed.

*No. 226 affirmed.*
*No. 452 reversed.*

MR. JUSTICE ROBERTS dissents in each case.

---

[14] *Mobile, J. & K. C. R. Co.* v. *Turnipseed,* 219 U. S. 35, 43; *Western & Atlantic R. Co.* v. *Henderson,* 279 U. S. 639, 642; *Helvering* v. *Rankin,* 295 U. S. 123, 129. Compare *Tot* v. *United States,* 319 U. S. 463.