STACKHOUSE OLDSMOBILE, INC.,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 15308.

United States Court of Appeals
Sixth Circuit.

April 10, 1964.

Edward Roberts, Youngstown, Ohio, for petitioner.

Warren M. Davison, N. L. R. B., Washington, D. C., for respondent, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Seymour Strongin, Attys., N. L. R. B., Washington, D. C., on the brief.

Before PHILLIPS, Circuit Judge, MAGRUDER, Senior Circuit Judge for the First Circuit,* and WEINMAN, District Judge.

MAGRUDER, Circuit Judge.

This case is before the court upon a petition by the Company asking us to review and set aside an order of the National Labor Relations Board. 140 NLRB 1239 (1963). The Board in its answer requested enforcement of the order.

Stackhouse Oldsmobile, Inc., petitioner herein, is engaged in selling automobiles, and receives substantial shipments in interstate commerce. No question is presented as to the Board's jurisdiction.

Following an election, the Union involved, The International Association of Machinists, Local Lodge 1519, AFL-CIO, was duly certified by the Board as the bargaining representative of the automobile salesmen employed by the Company.

There were several meetings between the representatives of the Company and of the Union with a view to working out an agreement. At these negotiations Harvey B. Rector, a labor relations

* Sitting by designation pursuant to Section 294(d), Title 28 U.S.Code.

consultant, was the chief negotiator for the Company. Agreement was reached upon the terms and conditions of employment, including a union security clause which read as follows:

> "As a condition of employment, all employees covered by this Agreement shall, on the 31st day following the signing of this Agreement, or in the case of new employees, on the 31st day following the date of hire, become members in the Union and remain members in good standing in the Union in accordance with the Union's Constitution and By-Laws during the term of this Agreement. The Company shall discharge any employee within three days following receipt of notice from the Union that an employee is not a member as herein set forth."

This was approved by Rector as the Company's representative. Nevertheless the Company refused to "put it in writing," that is, to sign the agreement on the ground of the illegality in the union shop provision, for the reason that the last sentence of the union security clause obligated the Company to discharge any employee who did not maintain his membership in the Union, contrary to § 8(a) (3) of the National Labor Relations Act. This section forbids discrimination in regard to hire and tenure of employment with intent to encourage or discourage membership in any labor organization, *"Provided,* That nothing in this [Act], or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization" requiring as a condition of employment membership in the union on or after 30 days. It was provided further in the section that no employer shall justify any discrimination against an employee for nonmembership in a labor organization "if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or re-taining membership." 29 U.S.C.A. § 158 (a) (3) (B).

■ It is perfectly true, as the Supreme Court held in H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 526, 61 S.Ct. 320, 85 L.Ed. 309 (1941), that the refusal by an employer on request of a labor organization to sign a written contract embodying the terms of an agreement which he has accepted concerning wages, hours, and working conditions is a refusal to bargain collectively in violation of § 8(a) (5) of the Act. The Board, citing Local 357, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. N. L. R. B., 365 U.S. 667, 676, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961), N. L. R. B. v. News Syndicate Co., Inc., 365 U.S. 695, 699–700, 81 S.Ct. 849, 6 L.Ed.2d 29 (1961), and N. L. R. B. v. Revere Metal Art Co., Inc., 280 F.2d 96, 101–106 (C.A.2d, 1960), cert. denied, 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 189 (1960), said that the union security clause was not illegal because the Board would not assume that a violation of the federal law was contemplated by the parties. Accordingly it found the Company to be guilty of the unfair labor practice described in § 8(a) (5) of the Act.

■ We cannot believe that Congress intended to make it an unfair labor practice for an employer to refuse to sign a collective bargaining agreement containing a union security clause which, by its literal terms, could require a violation of § 8(a) (3) and § 8(b) (2) of the Act. The union security clause quoted above would incorporate by reference into the contract the constitution and by-laws of the Union, and by its express terms would require the employer to discharge any employee within three days following receipt of notice from the Union that the employee was not a member in good standing according to the Union's constitution and by-laws, whatever the specific ground or cause might be.

In N. L. R. B. v. News Syndicate Co., Inc., supra, which was the Supreme Court decision that the Board mainly relied upon, there was language in the agreement expressly stating that the general laws

of the Union "not in conflict * * * with federal or state law" would govern relations between the parties. 365 U.S. 695 at 700, 81 S.Ct. at 852, 6 L.Ed.2d 29. In Local 357, International Brotherhood of Teamsters v. N. L. R. B., supra, the bargaining agreement contained a provision to the effect that there would be no discrimination in favor of union members. 365 U.S. 667 at 675, 81 S.Ct. 835, at 839, 6 L.Ed.2d 11. No such "saving clause" is contained in the bargaining agreement here under review. Though we fail to find such language in the Second Circuit case also cited by the Board, N. L. R. B. v. Revere Metal Art Co., Inc., supra, a reversal of the Labor Board, 123 NLRB 114 (1959), and though the conclusion therein reached is perhaps justified, a somewhat different factual situation was present, and we attach no significance to the denial of certiorari in that case. Brown v. Allen, 344 U.S. 443, 488, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

Suppose the agreement called for particularly manifest outlawed conduct. Suppose, for instance, the Company agreed to fire anybody that the Union requested to be fired without the pretense of there being a maintenance of membership clause in the contract. Without doubt this would be an illegal agreement. Though there is no violation of § 8(a) (3) until there is an actual discharge of an employee, surely it could not be said that the Company had failed to bargain collectively in refusing to sign an agreement which called for illegal conduct on its part. We believe that this case is just that.

If the proposed union security clause is intended by the parties to require the discharge of an employee within three days following receipt of notice from the Union that the employee is not a member in good standing in the Union only because of his failure "to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership" (29 U.S.C.A. § 158(a) (3) (B)) under the constitution and by-laws of the Union, we see no reason why the bargaining agreement should not expressly say so, or, in the alternative, why there should not be inserted in the agreement a saving clause such as was present in N. L. R. B. v. News Syndicate Co., Inc., supra, and Local 357, International Brotherhood of Teamsters v. N. L. R. B., supra.

The union security clause quoted earlier in this opinion obviously would place a heavy burden on the employer. Each time the Union might request the discharge of a certain employee, the employer would have the responsibility of investigating and determining that the true and only reason for the requested discharge was the employee's failure to tender dues and initiation fees. N. L. R. B. v. Spector Freight System, Inc., 273 F.2d 272 (C.A.8th, 1960), cert. denied, 362 U.S. 962, 80 S.Ct. 879, 4 L.Ed. 2d 877 (1960); N. L. R. B. v. Pape Broadcasting Co., 217 F.2d 197 (C.A. 5th, 1955). Failure so to investigate might result in the employer's violating § 8(a) (3), having to reinstate the employee, and becoming liable, in part at least, for back wages. N. L. R. B. v. Spector Freight System, Inc., supra. See Union Starch & Refining Co. v. N. L. R. B., 186 F.2d 1008, 27 A.L.R.2d 629 (C.A.7th, 1951), cert. denied 342 U.S. 815, 72 S.Ct. 30, 96 L.Ed. 617 (1951).

The imposition of such a heavy burden on the employer would be unnecessary in a sense because such a clause could not legally give stronger force to the constitution and by-laws of the Union than is granted by the above-cited provisions of the Act. Yet it could create confusion and misapprehension among employees who are not familiar with the limitations prescribed by Congress. We therefore agree with Board Member Leedom that such a clause clearly "would not contribute to the stability of collective-bargaining relations." 140 NLRB 1239 at 1241. And see N. L. R. B. v. Leece-Neville Co. and International Brotherhood of Electrical Workers, etc., 330 F.2d 242 (C.A.6th, 1964).

█ It is evident that we must enforce so much of the order as was based upon the finding that the Company was

guilty of an unfair labor practice in violation of § 8(a) (1) of the Act. There was substantial evidence on the record considered as a whole sustaining this finding that the threats of discharge for discussing Union matters were made during "coffee breaks" which were the employees' own time. See Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). See also N. L. R. B. v. Monarch Tool Co., 210 F.2d 183, 187 (C.A.6th, 1954), cert. denied, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1109 (1954).

A decree will be entered denying enforcement of that part of the order of the Board holding that the Company has violated Section 8(a) (5) and (1) of the Act by refusing to execute the agreement containing the union security clause here in issue and directing that said agreement now be signed. In all other respects the order of the Board will be enforced.