Charles H. **POINDEXTER**, Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD**, Respondent.

**Northside Electric Company**, Intervenor.

No. 10001.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 4, 1965.

Decided Dec. 6, 1965.

Charles H. Poindexter, pro se.

Warren M. Davison, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and George H. Cohen, Atty., N. L. R. B., on the brief), for respondent.

Before SOBELOFF and BRYAN, Circuit Judges, and MICHIE, District Judge.

SOBELOFF, Circuit Judge:

This is Charles Poindexter's pro se petition to set aside an order of the National Labor Relations Board upholding the trial examiner's determination that Northside Electric Company discharged him for cause and not in violation of section 8(a)(3) of the Labor Management Relations Act.

During the period in which the alleged unfair labor practice occurred, Northside Electric Company was engaged in the installation of electrical equipment in approximately fourteen buildings encompassing an area of 100 acres at the duPont Project jobsite in Spruance, Virginia. Northside employed a number of separate working crews of electricians, each under the supervision of a foreman. All the supervisors as well as the employees are members of the International Brotherhood of Electrical Workers. Since 1947, the company and the union have enjoyed a harmonious relationship under collective bargaining agreements.

The agreements have provided that the union should be the exclusive source of referrals of applications for employment. Poindexter was hired in February, 1960, upon the recommendation of Grover Wiley, business manager of I.B.E.W. Local No. 666, and worked as a journeyman electrician along with Albert Crouch, under the so-called "buddy system."[1]

When Crouch was promoted to foreman in October, 1962, he was instrumental in having Poindexter appointed by the union to the position of shop steward, which position Poindexter assumed in November, 1962. As was customary, Poindexter continued to be employed as a journeyman electrician, and as an employee of the company was expected to perform his duties.

Although the collective bargaining agreement in this instance, unlike some other agreements, did not in terms permit shop stewards to conduct union business during working hours, the company permitted the practice and allowed shop stewards reasonable time during the workday to transact union affairs. The company, however, reasonably required shop stewards to inform their supervisors of their whereabouts when they intended to leave their work stations and conduct union business.

The record plainly shows that Poindexter treated his union position as a justification for neglecting his work as an electrician. Crouch testified that once Poindexter assumed his new post, he (Poindexter) worked scarcely two hours a day with his job crew. Crouch also testified that Poindexter rarely notified him of his intended absences, as required by the prevailing practice. Accordingly, because Poindexter's excessive absence from the job reduced the effectiveness of Crouch's crew, Crouch in February or March, 1963, requested that Poindexter be transferred to some other crew. The company acquiesced in Crouch's suggestion and transferred Poindexter to an area of the project where most of the electricians were located, so that his walking back and forth to conduct union business would not consume so much of his working time.

Emmett Gathright was the foreman of Poindexter's new job crew. Poindexter's course of conduct continued unaltered. For a three-month period after joining Gathright's crew, he persisted in spending most of his time talking to employees away from his work station. Gathright

---

1. The term "buddy system" refers to the practice of journeymen electricians working in pairs.

felt it necessary to report this situation to company executives, just as Crouch had done, and thereupon the company transferred Poindexter in April or May, 1963, to still another crew. In addition, the company took occasion to advise the union business agent, Wiley, that Poindexter was not doing his job as a journeyman electrician, and Wiley, in turn, warned Poindexter against abusing his position as steward by neglecting his daily work assignments.

Poindexter's latest supervisor was foreman Joseph Keller. Unhappily, Keller's experience with Poindexter was the same as that of Crouch and Gathright. The company's patience was finally exhausted, and on Monday, June 10, it dismissed Poindexter.

There is no reason to suspect any unlawful motivation for the discharge. There is no history of intra-union controversy to impugn the testimony of supervisors Crouch, Gathright, and Keller, who were also union members. Most of the derelictions attributed to Poindexter he did not deny; but even if it can be said that the record presents an issue of fact, it is beyond question that first the examiner and then the Board were the duly empowered authorities to settle the issue.

Although an employer may not discharge a shop steward for the zealous performance of his union duties,[2] the law does not entirely exempt the employee from his obligations or insulate him from appropriate discipline for violation of reasonable working regulations.[3] The discharge of the present petitioner was made in good faith, without any taint of anti-union animus, after ample warning, for persistent neglect of his duty to the employer. The petition to set aside the Board's order is

Denied.

2. Metal Blast, Inc. v. N.L.R.B., 324 F.2d 602 (6 Cir. 1963).

3. Cf. Republic Aviation Corp. v. N.L.R.B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945).