**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NATIONAL JEWISH HOSPITAL AND RESEARCH CENTER, Respondent.**

No. 77–1061.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 12, 1978.

Decided Nov. 2, 1978.

Andrew F. Tranovich, N. L. R. B., Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and John D. Burgoyne, Atty., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Henry C. Cleveland, III, of Saunders, Snyder, Ross & Dickson, P. C., Denver, Colo., for respondent.

Before DOYLE and LOGAN, Circuit Judges, and STANLEY, Senior District Judge.*

WILLIAM E. DOYLE, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order against the National Jewish Hospital and Research Center, following adjudication by the Board that the hospital had violated § 8(a)(1) of the National Labor Relations Act when it promulgated and enforced overly broad "no-solicitation" rules applicable to the hospital premises. The controversy extended to other violations which will be discussed.

I.

Until December 15, 1975, respondent had a "no-solicitation" rule, which provided:

Solicitations, collections and petitions for outside agencies are permitted only on approval of the administrator.

In November 1975, Richard Blake, an employee of the hospital, commenced organizing for the Service Employees International Union, Local 105. On December 10, 1975, Blake solicited an employee named William Turner in one of the hospital buildings and asked him to sign a union authorization card and gave him such a card. On December 15, Phyllis Wilson, who was Blake's supervisor, summoned him and accompanied him to the office of the personnel director for the hospital, Robert MacDevitt. Blake was given a warning notice by MacDevitt for violating the "no-solicitation" rule. He said that his concern was the solicitation of an employee who was on duty at the time.

A revised rule was then posted (on December 17). This regulation did give recognition to the right of solicitation, but prohibited it from any public area within the hospital. Solicitation was confined to non-work and nonpublic areas "during non-working time."

On January 7, 1976, in the hospital cafeteria, Blake sought the signatures of various employees on union authorization cards. As a result, on the following day, surveillance of Blake was started. He was watched in the cafeteria where the supervisor who watched him maintained a very short distance from him. He was told by his supervisor, Phyllis Wilson, that he was being watched and that the cafeteria was a public place where he was not entitled to solicit.

The next incident occurred on March 5, 1976. On that date, Blake was shown a letter from an individual who had been a patient there and who was a national trustee of the hospital. This letter contained a complaint against Blake as a result of a conversation that Blake had with the writer, Meyer Sharlin, while the latter was waiting to receive medication. In essence, it said that Blake solicited the aid of Sharlin in organizing the non-professional employees of the hospital. Sharlin refused to help. The letter said that Blake had mentioned the fact that Sharlin was a member of the board of trustees and had donated a room and had asked him how much he donated. Sharlin had other complaints, which he expressed in the letter, besides Blake. After showing the letter to him, Phyllis Wilson fired him. The personnel office delivered a termination notice to Blake, which stated that his termination was a result of his inconsiderate treatment of a patient. The notice did, however, set forth the two previous solicitations by Blake, which have been described.

The disciplining and firing of Blake resulted in the Service Employees International Union, Local 105, filing complaints which were served on the hospital on January 15, 1976, and on March 9, 1976. The two complaints were consolidated and were issued on April 20, 1976, alleging that the hospital had violated § 8(a)(1) and (3) of the National Labor Relations Act. The cause was tried before an administrative law judge, Earldean V. S. Robbins.

* Of the District of Kansas, sitting by designation.

## II.

The issues heard before the administrative law judge were whether the respondent hospital:

a. Had promulgated an illegal no-solicitation and no-distribution rule.

b. Had disparately applied and enforced illegal no-solicitation rules.

c. Had engaged in unlawful surveillance of an employee's protected activity.

d. Had discharged Blake because of his activities on behalf of the union.

## III.

The opinion of the administrative law judge, which was adopted in its entirety by the Board, condemned both the original and revised no-solicitation rules of National Jewish Hospital. The original of these, it held, was invalid because it required prior permission for any solicitation. The revised one, which prohibited employee solicitation during nonworking hours in working areas other than patient care areas, was ruled to be a violation of § 8(a)(1) of the Act. The hospital was also found to have violated the Act (§ 8(a)(1)) by issuing a written warning to employee organizer Blake for his first infraction of the invalid no-solicitation rule and by the oral reprimand for a second such violation and by engaging in surveillance of Blake's activities in the cafeteria.

The administrative law judge further found that Blake's discharge violated § 8(a)(1) and (3), 29 U.S.C. § 158(a)(1), (3) (1970). Respondent was ordered to cease and desist prohibiting its employees from soliciting on behalf of any labor organization on the premises, other than in immediate patient care areas, during nonworking time or in other ways interfering with employees' rights under the National Labor Relations Act.

The judge also ordered that Blake be reinstated with back pay, with his records expunged of the two unlawful warnings and reprimands, and that a notice be posted. The Board affirmed the decision with only minor modifications.

The legal background for this decision must be considered briefly. Both the administrative law judge and the Board, in reaching the decision which we are reviewing, were following the Board's decision in *St. John's Hospital & School of Nursing, Inc.*, 222 NLRB 182. Subsequent to the issuance of the Board's decision in the case before us, this court had before it an enforcement proceeding in *St. John's Hospital & School of Nursing, Inc. v. NLRB,* 557 F.2d 1368 (10th Cir. 1977). A panel of this court denied enforcement of the Board's order in a substantial respect. The Board had ruled that employees should have access for solicitation purposes to all areas of the hospital except strict patient care areas. This court, however, determined that insofar as the Board's order permitted solicitation in areas of the hospital to which patients had access, it was not entitled to be enforced. *See St. John's Hospital & School of Nursing, Inc. v. NLRB, supra.* The reasoning was that the hospital's interest in having a tranquil atmosphere for patients required that it be free to prohibit solicitation not only in strict patient care areas but, in addition, in areas accessible to patients such as hallways, stairs, elevators, waiting rooms and public cafeterias and gift shops. The sweep of the order was such as to preclude solicitation except in employee-only lunchrooms and cafeterias, locker rooms, restrooms and parking areas.

## IV.

At about the time that this court rendered its decision in *St. John's Hospital,* the First Circuit reached a contrary result in *NLRB v. Beth Israel Hospital,* 554 F.2d 477 (1st Cir. 1977), *aff'd,* 437 U.S. 483, 98 S.Ct. 2463, 57 L.Ed.2d 370 (1978). Its holding was that a no-solicitation rule in areas accessible to patients was illegal and was not to be enforced in a cafeteria and coffee shop, notwithstanding that some patients patronized these places. The hospital's rule there was not unlike the one in the instant case in the respect that it limited solicitation to locker rooms and certain restrooms. 544 F.2d at 479 n.1.

On June 22, 1978, the Supreme Court affirmed in all aspects the decision of the First Circuit in *Beth Israel, supra.* It agreed with the First Circuit that the Board's order was entitled to be fully enforced.

The Supreme Court spoke with approval of the Board's conclusion that the strict rules against solicitation applied only to patients' rooms, operating rooms and places where patients received treatment, such as x-ray and therapy rooms. On this the Court said:

> The Board concluded that prohibiting solicitation in such situations was justified and required striking the balance against employees' interests in organizational activity. The Board determined, however, that the balance should be struck against the prohibition in areas other than immediate patient care areas such as lounges and cafeterias absent a showing that disruption to patient care would necessarily result if solicitation and distribution were permitted in those areas. The Board concluded, on a record devoid of evidence which contradicted that assessment, that the possibility of disruption to patient care in those areas must be deemed remote.

98 S.Ct. at 2471.

The opinion of the Supreme Court, like the case at bar, deals with the issue whether union solicitation activity can be prohibited by the hospital in the hospital cafeteria and coffee shop which are accessible to patients and the public. *Id.* at 2477. The Court said that in determining whether solicitation is permissible for areas accessible to patients, the National Labor Relations Board must balance the relative strengths of the competing interests which are, on the one side, the likelihood of disruption of patient care, as opposed to the extent of the interference with union organizational activities. *Id.* at 2475–76. The Court termed the cafeteria in *Beth Israel* as being a natural gathering area for employees, one in which the risk of harm to patients is relatively low as compared to potential alternative locations within the facilities. The Court regarded the evaluations of the Labor Board in that case as valid since it had considered all of the competing interests. The Supreme Court also said in passing that the restrictions imposed by the hospital, which effectively prevented union solicitation of the employees and meaningful discussions by them, constituted an unfair labor practice, because when union organization activities are restricted to an area of the hospital which is not even accessible to all of the employees, there is an effective deprivation of ability to pursue union activities. *Id.* at 2468. Such unreasonable interference with employee solicitation, absent special circumstances, is presumptively an unfair labor practice. *Id.* at 2470. The Court noted that in *Beth Israel* (as in the present case) solicitation was allowed only in locker rooms and the adjacent restrooms. *Id.* at 2468.

It was noted by the Supreme Court that the Board had recognized that a hospital may be warranted in prohibiting solicitation even on nonworking time, in strict patient care areas, having in mind that solicitation could affect the patients. It was said that areas where this could happen would include the patients' rooms, operating rooms and patient treatment areas like x-ray and therapy. *Id.* At the same time the Court, however, rejected the notion that the possibility of disruption to patients required a prohibition on solicitation in any area accessible to a patient. *Id.* at 2477. To so hold excludes all sections of the hospital from solicitation. A patient could have access to the entire hospital. The Court agreed with the Board that the possibility of disruption to patient care from solicitation in cafeterias was remote. *Id.* at 2471. The hospital, it said, failed to introduce any evidence of harm to patients caused by solicitation in the cafeteria, notwithstanding that it had better access to such information than the Board had. *Id.* at 2474. Also, the hospital had allowed charitable drives to be conducted in the cafeteria in the past and this was

without disruption of patient care. *Id.*[1] The Court concluded that the Board was free to draw rational inferences from the evidence that the possibility of disruption from union solicitation was remote. *Id.* at 2470. The Board was not required to prove that patient care would not be disrupted by such solicitation. *Id.* at 2472.

The protection of tranquility for the patients has appeal. Nevertheless, outside the strict patient care areas the Supreme Court considered the possibility of disruption too remote. It held that

> . . . the Board's general approach of requiring health-care facilities to permit employee solicitation and distribution during nonworking time in nonworking areas, where the facility has not justified the prohibitions as necessary to avoid disruption of health-care operations or disturbance of patients, is consistent with the Act.

*Id.* at 2477.

The majority opinion in *Beth Israel* considered the issue of cafeteria solicitation as part and parcel of the broader question of to what extent there can be employee discussion of union membership in areas of the hospital which are not exclusively devoted to patient care. Thus its opinion was that solicitation could be carried on in all areas of the hospital except those which were devoted to patient care (like patients' rooms, x-ray rooms, therapy areas, etc.). The fact that patients had access to areas was not considered important, because in a hospital like National Jewish the patients find their way to all parts of the hospital buildings. The opinion left open the possibility that the hospital could show the presence of special circumstances to establish that patient care was affected by solicitation and that actual patient disruption resulted from it. The mere possibility, however, of disturbance was held to be insufficient to justify promulgation of a regulation imposing unrelated restrictions.

In the *Beth Israel* case the numbers of patients who patronized the cafeteria were relatively small. This, however, was not anything like a turning point in the Court's opinion. Matters of substance were considered such as the necessity for the employees to have a place on the premises to exercise their solicitation rights in accordance with the Supreme Court's decision in *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). Also, the Supreme Court approved the Board's findings and orders together with the decision of the First Circuit, which ordered enforcement.

The record before us provides no factual basis for a conclusion that the patients at National Jewish Hospital suffered upset or experienced disruption of tranquility as a result of union solicitation in the cafeteria or in other places. In this connection we must be mindful that the Supreme Court in *Beth Israel* made it plain that the burden was on the employer to bring forward positive evidence showing that solicitation activities had a disrupting effect upon patients' health. In the dearth of such evidence, it becomes impossible to upset the findings of the Board and, therefore, there is no alternative except to enforce the Board's order. To accept the notion that the union solicitation per se pollutes the atmosphere would be out of harmony with the Supreme Court's ruling on burden of proof. Therefore, the view that the mere presence of patients in various places in the hospital of itself prevents union solicitation in those places must also be rejected. To so rule would not only be unsupported by evidence, it would also, due to the ambulatory condition of the patients, render the entire hospital off limits to solicitation.

This is our reasoning in rejecting the arguments that inferences are to be drawn from the fact that the patients are ambulatory and the fact that they tend to be nervous because of being asthmatic.

---

1. It would ordinarily be anticipated or expected that a fund-raising activity might be more disruptive than labor organization solicitation.

As to the cafeteria, we are mindful that it, in the past, has been divided, whereby employees are directed to one side and patients to the other. This does allow patients to have some latitude if they do not wish to associate with employees. In other words, we do not say that the patients must associate with employees.

Finally, we consider the total impact of the *Beth Israel* decision. It is perhaps unnecessary to say that we consider that its thrust is strong in relationship to the case at bar; that it is not only applicable but controlling; that it comes to grips with our problem and resolves it.

It is our conclusion that the rulings and orders of the Labor Board are in accordance with the *Beth Israel* case, and it is hereby ordered that these rulings and orders are to be enforced.

STANLEY, Senior District Judge, dissenting.

I respectfully dissent.

My concurrence in the panel's opinion filed July 28, 1978 was based—I now think incorrectly—on my belief that the decision of the Supreme Court in *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 98 S.Ct. 2463, 57 L.Ed.2d 370 (decided July 22, 1978), compelled enforcement of the Board's order.

As noted by the majority the opinion of the Supreme Court in *Beth Israel* deals, like the case at bar, with the issue whether union solicitation activity can be prohibited by a hospital in a hospital cafeteria and coffee shop which is accessible to patients and the public as well as to the employees.

This case originated with the discharge of Richard Blake, an employee of the hospital and an organizer for a union. The principal reason given for his termination was "inconsiderate treatment of a patient" (Meyer Sharlin) while Blake was treating him. The Board found "some merit in respondent's argument that in view of Blake's failure to give his account of what occurred, the Blake-Sharlin incident as reported by Sharlin would constitute ample justification for Blake's discharge. The issue, however, is not whether the incident, would constitute such justification but whether, in fact,

Blake's discharge was motivated solely by this incident, or whether it was motivated in whole, or in part, by Blake's union activities" and "that Blake's discharge was motivated, at least in part, by his violation of the no solicitation rules". It is clear that the Board's decision was based on its conclusion that the hospital's rule, insofar as it banned solicitation in the cafeteria and coffee shop, was invalid, and that his discharge violated Section 8(a)(1) and (2) of the National Labor Relations Act.

The majority holds that the decision of the Supreme Court in *Beth Israel* considers and resolves all of the issues posed in this case and concludes that it is fully applicable and controlling. I cannot agree. The function of the Board, according to *Beth Israel*, is to balance conflicting legitimate interests to effectuate fundamental national labor policy. In cases affecting the health care industry the conflicting interests are, on the one hand, the hospital's desire to protect its patients from disturbance and, on the other, the union's desire to organize the hospital's employees. As noted by Mr. Justice Brennan "it may be [in the health care field] that the importance of the employer's interest here demands use of a more finely calibrated scale." The Board itself has concluded that the special characteristics of hospitals justify a rule different from that which the Board generally applies to other employers. *St. John's Hospital v. School of Nursing, Inc.*, 222 NLRB 1150 (1976).

On the basis of the record before the Board in *Beth Israel* the Supreme Court held that the Board had correctly evaluated the relative strengths of the competing interests and considered all factors appropriately to be taken into account. The record in *Beth Israel* differs in each material area from the record before the Board in the case at bar.

In *Beth Israel* the hospital "was unable to introduce *any* evidence to show that solicitation or distribution [in the cafeteria] was or would be harmful." (Emphasis in the original.) The majority opinion in our case includes the statement.

The record before us provides no factional basis for a conclusion that the patients

at National Jewish Hospital suffered upset or experienced disruption of tranquility as a result of union solicitation in the cafeteria or in other places.

I do not find support in the record for that observation. At the hearing before the Administrative Law Judge the uncontroverted evidence was that Jewish Hospital differs notably from a general hospital; that its patients may remain in the hospital six to nine months or longer; that 90 to 95 percent of the patients are ambulatory and take their meals in the cafeteria; that medical care is provided to asthmatic patients who have been unable to cope with this condition on an outpatient basis; that asthma is considered a psychophysiological disorder "which has an organic, biological medical basis complicated by emotional factors such as stress, anxiety, anger and tension. The extent to which an asthmatic can cope with these emotions can be a determining factor in how well he manages his asthma." Despite this evidence—undisputed—the Board, although recognizing that the hospital's basic function is patient care, concluded that the rule prohibiting solicitation in the cafeteria patronized by 95 percent of the patients was not necessary to avoid disruption of that function.

In *Beth Israel* a patient was allowed to visit the cafeteria only when his doctor certified that he was well enough to do so and the Supreme Court deemed it "of critical significance that only 1.56 percent of the cafeteria patrons are patients." In the case at bar about 95 percent of the patients, including some receiving intravenous fluids and oxygen treatment frequent the cafeteria.

In *Beth Israel* the Supreme Court held that consideration of the availability of alternate space where union activities were permitted was inapposite "where the only areas in which organizational rights are permitted is not conducive to their exercise". There only a fraction of 2200 regular employees had access to any of the areas (six separate and scattered locker rooms containing only 613 lockers) in which union solicitation was permitted. In the case at bar the approximately 650 employees of Jewish Hospital had access to four lounges and two locker rooms where solicitation was permitted.

I believe that in this case the Board, on the record before it, failed utterly to take into account the unique character of Jewish Hospital or the effect of stress upon the patients. I believe also that the Board's decision, insofar as it deals with solicitation in the hospital cafeteria, is not rational; is not supported by the evidence, or for that matter by the findings of the administrative law judge adopted by the Board; and that the Board's own standards as announced in *St. John's Hospital* were misapplied.

I would deny enforcement of those parts of the Board's order requiring the respondent to cease and desist from promulgating any rule prohibiting solicitation or the distribution of literature in the cafeteria and coffee shop; requiring the respondent to expunge from its records reports on the activities of Richard Blake; requiring the respondent to offer to Richard Blake reinstatement to his former job or an equivalent position; and requiring the respondent to make Richard Blake whole for his loss of earnings.