I concur with Sections I, II, III, and IV, which address the claims that SHPDA committed certain procedural and statutory errors, such as failing to obtain a majority vote of the entire CON Review Board, voting by written ballot, and failing to include sufficient findings of fact in its final order, and the further claims that collateral estoppel and res judicata apply to an earlier denial by SHPDA of a CON, and that the Governor's moratorium prohibits the issuance of a CON to Lloyd Noland Hospital. I must respectfully disagree, however, with the holding by the Court "that SHPDA's decision granting a CON to Lloyd Noland was clearly erroneous, because the record did not contain substantial evidence to support the findings required by § 22-21-266."
The effect of this holding is that the Court has substituted its own judgment for that of the Certificate of Need Review Board, the administrative agency designated by law to make the determination. The Court first holds "that the record does not support a finding of consistency with the State Health Plan ('SHP')," even though SHPDA, the agency responsible for policing and implementing the SHP, argues that there is no inconsistency. After making this holding, the Court then engages in an independent weighing of the evidence and concludes that "[c]onstructing a new $26,270,000 hospital in an overbedded area, relocating currently unstaffed beds into the new hospital, and providing duplicative services in the new hospital do not promote the SHP goal of cost containment." The Court then finds that "there was evidence of less costly, more efficient, or appropriate alternatives to the proposed service," and then cites, with approval, a circuit court determination that there were less costly alternatives available through prepaid medical plans. Additionally, the Court found that "the record indicates that existing inpatient facilities with services similar to those proposed are not being used in an appropriate and efficient manner consistent with community demands," that "alternatives to new construction have not been considered and implemented to the maximum extent practicable," and that "the record reflects that patients will not experience serious problems in obtaining inpatient care of the type proposed in the absence of the proposed new service."
The role of courts generally in reviewing an administrative agency's determination is *Page 72 
stated in Chevron U.S.A., Inc. v. Natural Resources DefenseCouncil, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984):
 "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 " 'The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.' Morton v. Ruiz, 415 U.S. 199, 231 [94 S.Ct. 1055, 1072, 39 L.Ed.2d 270] (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.
 "We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations
 " 'has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations. See, e.g., National Broadcasting Co. v. United States, 319 U.S. 190 [63 S.Ct. 997, 87 L.Ed. 1344]; Labor Board v. Hearst Publications, Inc., 322 U.S. 111 [64 S.Ct. 851, 88 L.Ed. 1170]; Republic Aviation Corp. v. Labor Board, 324 U.S. 793 [65 S.Ct. 982, 89 L.Ed. 1372]; Securities Exchange Comm'n v. Chenery Corp., 332 U.S. 194
[67 S.Ct. 1575, 91 L.Ed. 1995]; Labor Board v. Seven-Up Bottling Co., 344 U.S. 344
[73 S.Ct. 287, 97 L.Ed. 377].
 " '. . . If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.' United States v. Shimer, 367 U.S. 374, 382, 383 [81 S.Ct. 1554, 1560, 1561, 6 L.Ed.2d 908] (1961).
 "Accord, Capital Cities Cable, Inc. v. Crisp, [467 U.S. 691] at 699-700 [104 S.Ct. 2694 at 2700-2701, 81 L.Ed.2d 580 (1984)]."
467 U.S. at 842-45, 104 S.Ct. at 2781-83.
In exercising its independent assessment of the evidence and the actual need for a community hospital at the proposed location, the Court unfortunately has expanded the role of the judiciary in reviewing administrative action. The scope of judicial review is clearly set out in the Alabama Administrative Procedure Act, Ala. Code 1975, § 41-22-20(k):
 "(k) Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized *Page 73 
by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency, or where no such statutory standards for judicial review are applicable to the agency, if substantial rights of the petitioner have been prejudiced because the agency action is:
 "(1) In violation of constitutional or statutory provisions;
 "(2) In excess of the statutory authority of the agency;
"(3) In violation of any pertinent agency rule;
"(4) Made upon unlawful procedure;
"(5) Affected by other error of law;
 "(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 "(7) Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."
The area where the proposed community hospital is proposed to be located is in the heart of one of the fastest growing areas of the State, and indeed, the nation. The fact that some of the petitioners had earlier requested a CON for the same area, and the fact that petitioners argue, albeit without success, that the prior determinations by the Board on those requests collaterally estop the Board from awarding the CON to Lloyd Noland, is evidence that would support the Board's determination of the "need" question.
The awarding of certificates of need, the setting of utility rates, the granting of motor carrier certificates, the granting of ABC licenses, the regulation of banks, zoning, and a myriad of other regulatory functions are vested in administrative boards and agencies that supposedly are in the best position to determine what is and what is not in the public good. Courts have a function in the process, but only where the decision of the administrative agency is clearly erroneous, "[u]nreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion." § 41-22-20(k)(7). I cannot find, as does the majority, that the Board's action here fits either of those categories.
I recognize the national concern with mounting health costs, and I recognize that providing health services has become a highly competitive business; this record contains substantial evidence of this competitiveness and of gubernatorial interest in the problem; nevertheless, I feel that the Court, in exercising its own independent review of the evidence, has weighed the evidence anew on the basic question and has, therefore, broadened the scope of judicial review, and has necessarily substituted its judgment for that of the administrative agency charged by law with the responsibility of protecting the public interest.
Based on these reasons, I must respectfully disagree with the Court's reversal of the judgment of the Court of Civil Appeals, which, I find, applied the proper scope of judicial review in this case.