. MARTIN, Circuit Judge,
dissenting in part:
I agree-with the Majority’s ruling about the atrium violation and Mercedes-Benz’s solicitation and distribution policy. I also agree with the Majority that the ALJ’s remedial order regarding the team centers was overbroad. The order should be remanded to the Board to either narrow its scope or do more factual development about special circumstances at the eighteen team centers for which the ALJ did not make findings.
However, I do not agree with the Majority’s holding that “the ALJ failed to recognize the distinction between converted and permanent mixed-use areas and failed to *1150 analyze the relative volume and nature of work and non-work activity in the team centers.” The Board does not impose this distinction on its factfinders, and I believe it exceeds our institutional role to create these categories and require the Board to apply them.
The ALJ and the Board followed the Board’s precedent in designating the team centers as mixed-use areas after finding and reviewing the facts. I would affirm the Board’s ruling that the team center where Mr. Gilbert distributed union materials is a mixed-use area. I respectfully dissent.
I.
We apply a narrow and deferential standard of review to Board decisions.
“[T]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall ... be conclusive.” 29 U.S.C. § 160(f). “So long as the Board has made a plausible inference from the record evidence, we will not overturn its determinations, even if we would have made different findings upon a de novo review of the evidence.” Cooper/T. Smith, Inc. v. NLRB, 177 F.3d 1259, 1261 (11th Cir. 1999); see also NLRB v. McClain of Ga., Inc., 138 F.3d 1418, 1424-25 (11th Cir. 1998) (“Our standard of review is limited /.. to determining whether the Board’s inference ... is supported by substantial evidence—not whether it is possible to draw the opposite inference.”).
We also defer to the Board’s expertise in developing rules that create- legal- presumptions. See Republic Aviation Corp. v. NLRB, 324 U.S. 793, 798, 65 S.Ct. 982, 985, 89 L.Ed. 1372 (1945) (The National Labor Relations Act “left to the Board the work of applying the Act’s general prohibitory language in the light of the infinite combinations of events which might be charged as violative 'of its terms. Thus a ‘rigid scheme of remedies’ is avoided and administrative flexibility within appropriate statutory limitations obtained to accomplish the dominant purpose of the legislation.”); Beth Israel Hosp. v. NLRB, 437 U.S. 483, 492, 98 S.Ct. 2463, 2469, 57 L.Ed.2d 370 (1978) (“The effect of [the Board’s] rules is to make particular restrictions on employee solicitation and distribution presumptively -lawful or unlaw-ful_”). For example the distribution of union materials in nonworking areas is presumptively lawful. See Stoddard-Quirk Mfg. Co., 138 N.L.R.B. 615, 621 (1962). Congress gave the Board authority to use its national labor relations policy expertise to formulate rules that balance conflicting legitimate interests such as employee-organization rights and employer-property rights. Beth Israel Hosp., 437 U.S. at 492, 500-01, 98 S.Ct. at 2469, 2473. Thus, “[t]he rule which the Board.adopts is judicially reviewable for consistency with the Act, and for rationality, but if it satisfies those criteria, the Board’s application of the rule, if supported by substantial evidence on the record as a whole, must be enforced.” Id at 501, 98 S.Ct. at 2473-74. Instead of reviewing the Board’s rules, the majority creates its own rule and faults the ALJ for not applying it.
II.
The Majority’s opinion presents the distinction between “permanent” and “converted” mixed-use areas as a framework established by the Board. Indeed, the Majority cites “45 years of Board precedent” to support its distinction. But I read none of the cases it cites to state a rule creating or even distinguishing between two types of mixed-use categories. It is beyond our deferential role to create a rule and then hold that the ALJ erred in failing to apply it. See NLRB v. Curtin Matheson Sci., Inc., 494 U.S. 775, 786, 110 S.Ct. 1542, *1151 1549, 108 L.Ed.2d 801 (1990) (“[T]he NLRB has the primary responsibility for developing and applying national labor policy.”).
The Majority recognizes that the Board has never clearly established a test for deciding whether an area is mixed-use. And it is the Board that has the expertise to establish a test if it decides one is necessary. The Board can also choose to grant its ALJs flexibility in crafting'solutions for a circumstance that is unique. See Beth Israel Hosp., 437 U.S. at 500-01, 98 S.Ct. at 2473 (“[I]t is to the Board that Congress entrusted the task of ‘applying the' Act’s general prohibitory language in the light of the infinite combinations of events which might b¿ charged as violative of its terms.’ ” (quoting Republic Aviation, 324 U.S. at 798, 65 S.Ct. at 985)). What matters here is that the Board has extended this flexibility to ALJs charged with making mixed-use determinations.
The Board’s allowance of flexibility to ALJs in designating mixed-use areas results in some variations in that designation. For example, in Transcon Lines, 235 N.L.R.B. 1163 (1978), the ALJ found generally that “the drivers’ room is, at best, a mixed use area, where drivers may either work or relax.” Id. at 1165. But in In Re United Parcel Serv., 325 N.L.R.B. 1 (1997), the ALJ ruled “that the check-in areas are used as nonwork or, at most, mixed use areas between 7:30 a.m. and the drivers’ start time of 8:30 a.m.,” thus limiting the area’s mixed-use status based on the time of day. Id. at 3.
The Majority chooses one understanding of the Board’s approach to these cases and makes it a new rule for how ALJs must analyze the facts of all eases about distributing union materials. Under the Majority’s rule, an ALJ will now be required “to analyze the relative volume and nature of work and non-work activity” in a given area. If both work and nonwork activities “perpetually”[1] occur in an area, then the Majority allows the ALJ to find that it is a “permanent mixed-use area.” If the activities are not “perpetual,” then the Majority directs the ALJ to consider whether an area is “converted” to mixed-use during specific times of the day. The Majority’s requirements impose a framework of analysis on ALJs the Board has never adopted. Beyond that, the Majority’s requirement that ALJs- consider time-limitations in “converted” mixed-use cases narrows the Board’s existing rule, which already limits distribution to nonworking time. See DHL Express, Inc,, 357 N.L.R.B. 1742, 1743 (2011) (“The Board has long held that rules. prohibiting distribution of literature are presumed valid unless they extend to activities during nonworking time and in nonworking areas.”) The Majority, while no doubt well intentioned, is doing the Board’s job for it.
The Majority also cites the D.C. Circuit for support. That court said that “[t]he Board has for decades—with court approval—found areas in which minimal or solely incidental work is conducted are to be considered ‘mixed-use’ areas in which a prohibition on distribution during non-work time has to be justified by special circumstances.” DHL Express, Inc. v. NLRB, 813 F.3d 365, 375 (D.C. Cir. 2016) (citing United Parcel Serv., 327 N.L.R.B. 317 (1998); Transcon Lines, 235 N.L.R.B. at 1165; Rockingham Sleepwear, 188 N.L.R.B. 698, 701 (1971)); see also United Parcel Serv., Inc. v. NLRB, 228 F.3d 772, *1152 776 (6th Cir. 2000) (citing Transcon Lines and Rockingham to support a similar proposition). But two out of three of the citations the D.C. Circuit gave for this proposition are cases the Majority gives as examples of “converted mixed-use” (Rockingham and United Parcel Serv.) and the third is offered by the majority as a “permanent mixed-use” case (Transcon Lines). See DHL Express, 813 F.3d at 375. This contrasting view of identical case law given by two Circuit courts is more evidence that the Majority created its own framework instead of deferring to the Board’s flexible approach. I do not understand the Board to have limited the definition of “mixed-use” to either of the categories imposed by the Majority. Rather, the Board has left room for the ALJs-to designate mixed-use areas, or not, based on the various situations that eome before them.. See, e.g., Ford Motor Co., 315 N.L.R.B. 609, 612 (1994) (discussing specific employee activities at times of specific distribution incidents to determine whether there was a distribution violation); Transcon Lines, 235 N.L.R.B. at 1164-65 (referring to several fixtures and functions of a drivers’ room in determining that it was “at best, a mixed use area, where drivers may either work or relax”); Rockingham, 188 N.L.R.B, at 701 (discussing plant schedule and use of spaces at various times before determining when distribution must be allowed).
III.
I view the ALJ’s decision that the team center was a mixed-use area to be supported by substantial evidence. In Stoddard-Quirk, the Board held that employees can distribute union literature in nonworking areas on the employer’s premises. 138 N.L.R.B. at 621. In Trans-con Lines, the Board extended that holding to mixed-use areas, meaning areas where employees “may either work or relax.” 235 N.L.R.B. at 1165. And the Board has reasoned that “[t]he concerns for protecting the production process which were , at issue in Stoddard Quirk do not rise to the same level when an employer compromises a work area by permitting nonwork use of it.” United Parcel Serv., 327 N.L.R.B. at 317; accord DHL Express, 357 N.L.R.B. at 1744. Further, the Board has recognized that “[i]t is the main production areas of an employer’s facility where the hazards of littering and maintaining order- are paramount over employee distribution of literature.” Found. Coal W., Inc., 352 N.L.R.B. 147, 150 (2008). However, aside from these broader observations, the Board also recognizes that special circumstances can call for more restrictive rules. See Stoddard-Quirk, 138 N.L.R.B. at 617 n.4, 620. These complex realities have led the Board to avoid establishing a more detailed test for determining whether an area is mixed-use. I fear the Majority opinion puts this Court at cross-purposes with the Board in this way.
This case requires only the simple application of our precedent in NLRB v. Transcon Lines, 599 F.2d 719 (5th Cir. 1979).[2] In that case we described “the drivers’ room as a place for lounging, recreation and waiting, as well as a place to receive dispatches and complete documents.” Id. at 721-22. On that record, we upheld the Board’s finding that the room was a mixed-use area as “supported by substantial evidence.” Id. at 721.
This ALJ found that the team centers at issue here were mixed-use areas based on *1153 their use “as meeting and eating places for off-the clock employees taking lunch or break time and also as offices for [Mercedes-Benz] supervisors.” This finding was supported by the design of the team centers, which “resemble[d] an office in some respects and a breakroom in others.” The ALJ also considered special circumstances, finding that the evidence provided by Mercedes-Benz was not specific to the team center where Mr. Gilbert distributed union materials.
Our job is to review this finding to see whether it is supported by substantial evidence in the record. This record shows the team centers are used for certain work functions, like pre-shift employee meetings. They contain a few desks and computers, and work-related items like attendance calendars and bulletin boards are fixed to the walls. But the team centers also have the trappings of a typical break-room, like refrigerators and microwaves for employees to use during breaks and before shifts. The centers also contain several tables that employees use for eating, drinking, and relaxing during lunch and break periods. Like the drivers’ room in Transcon Lines, the team centers are used for a combination of work and non-work functions. The ALJ’s designation of the team center as a mixed-use area was supported by' substantial evidence.
IV.
Also, in my view, the Majority fails to properly credit the analysis in the ALJ’s order. The Majority opines that the ALJ erred because “the Order does not limit the mixed-use finding to any specific period of time.” To the contrary, the ALJ ordered Mercedes-Benz to “[cjease and desist from ... [prohibiting employees not on working time from distributing literature to other employees not on working time in a mixed use area.” This effectively limits the mixed-use status of the team centers to lunch periods, scheduled breaks, and pre-shift changes. While I don’t agree with the Majority’s invention of “converted mixed-use areas,” even accepting it, the ALJ’s order complies.
I respectfully dissent.

. In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.